**Affirmed and Memorandum Opinion filed April 28, 2015.**



In The

# Fourteenth Court of Appeals

### NO. 14-14-00984-CV

## IN THE INTEREST OF R.N.Y., A CHILD

**On Appeal from the 314th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2013-06634J**

## M E M O R A N D U M    O P I N I O N

R.L.Y. ("Father") and L.T.L.Y. ("Mother") appeal the trial court's final decree terminating their parental rights, and appointing the Department of Family and Protective Services (the "Department") as sole managing conservator of R.N.Y. (the "Child"). In a single issue the Mother challenges the trial court's finding that termination of her rights would be in the best interest of the Child. The Father's appointed counsel filed a brief in which he concludes the appeal is wholly frivolous and without merit. We affirm the termination of both parents' rights.

# I. BACKGROUND

The Child was born August 30, 2013. On December 4, 2013, the Department filed an original petition for protection of the child and for termination of the parents' rights. The affidavit attached to the petition alleged that on December 3, 2013, the Department received a report alleging physical abuse of the Child. The Child sustained multiple rib fractures, bruising in the chest area, and a small cut on the upper lip. The parents gave inconsistent explanations for the Child's injuries.

On December 17, 2013, the trial court held a show cause hearing at which Dr. Reena Isaac testified. Dr. Isaac treated the Child when he was brought into the hospital on December 3, 2013. The Child had multiple rib fractures, which were several days old at the time he was brought into the hospital. He had an abrasion on his lip and two bruises on his chest.

The Father reported that the rib fractures resulted from carrying the Child while he was walking down the stairs, slipping, and forcefully grabbing the child. The Father reported that the bruises occurred approximately two weeks earlier while he was bathing the Child. The Mother reported that she did not see the injuries occur. Neither parent satisfactorily explained the mouth injury. Based on the injuries to the Child and the parents' explanations, Dr. Isaac testified that the Child was in danger. Dr. Isaac testified that the Mother should have been aware of the bruises and should have reported them.

The Mother testified that she did not know about the Child's broken ribs because on the day that the Child was injured she was in the hospital visiting her mother. The Father reported that the crib broke causing the cut on the Child's lip. The Mother reported that prior to the December 3 trip to the hospital, she had taken the Child to the doctor because he appeared "fussy." The doctor and his assistant told the Mother that the baby had "a gas bubble."

At the conclusion of the hearing, the trial court named the Department temporary managing conservator of the Child. Upon request of the Department, the trial court ordered a drug test of the Mother. On January 24, 2014, the Department filed Family Service Plans for both parents requiring them to comply with certain services or risk termination of their parental rights. At the time of a later hearing on February 11, 2014, the Father had been arrested for injury to the Child.

On May 20, 2014, the trial court held a permanency hearing. At that time the Child was living with the maternal aunt and doing well in that placement. The Mother had completed a psychological assessment, a drug and alcohol assessment, and parenting classes. She was sporadically submitting to random urine tests, which resulted in three negative results. At that time, the Mother was looking for a job but had not shown proof of housing; she was still living in her mother's home, which is the home where the child was injured. The Father was still incarcerated.

On August 28, 2014, a review hearing was held in which Sarah Nash, the caseworker, testified that the Mother refused to submit to extensive outpatient treatment for drug and alcohol addiction, and had four positive urine test results out of 12 tests. The Mother tested positive for cocaine, marijuana, and benzogleconene. The Father pleaded guilty to injury to a child and received a sentence of ten years' deferred adjudication community supervision. The Father received his Family Service Plan, and was given referrals to complete his parenting classes and psychological assessment, but did not complete any services. The Child had been moved to a foster home with foster parents who wanted to adopt him. The Department had an approved home study for the Child's maternal great aunt.

On December 4, 2014, the termination case was called to trial. The Department admitted into evidence the Family Service Plans, the Mother's failed drug tests, and the Father's deferred adjudication order for injury to the Child. The

drug tests showed positive results for cocaine, marijuana, and benzogleconene. The Mother's Family Service Plan required her to:

- obtain, pay for, and maintain appropriate housing for herself and her child;

- obtain and maintain legal and verifiable employment for at least 6 months;

- attend all court hearings, permanency conferences, family visits, and scheduled appointments;

- submit to random drug screenings;

- submit to a 4C's Evaluation to assess her emotional and mental health;

- attend, actively participate in, and successfully complete parenting classes; and

- complete a drug and alcohol assessment and follow all recommendations.

Nash testified that the Child came into Department custody because he was brought into the hospital with multiple healing rib fractures, bruises on his chest, a cut on his lip, and a rash under his arm. Nash testified that the first treating doctor estimated the rib fractures occurred 10 to 14 days before the Child was brought to the hospital. Nash testified that the time frame described for the Child's previous medical visit in which he was diagnosed with "gas bubbles" does not coincide with the time frame in which his ribs were broken. Counsel for the Mother argued that the Mother acted appropriately three weeks earlier when she took the Child to the hospital because he was "fussy." Nash disputed that the broken ribs may have been misdiagnosed as "gas bubbles" three weeks earlier; she testified that the doctor reported on December 3, 2013 that the rib fractures were 10 to 14 days old, not three weeks old. Nash maintained that the Mother had delayed obtaining medical attention after the Child's ribs were broken. Nash admitted that by taking the Child to the doctor that the Mother had shown some concern for the Child.

4

Neither parent completed the services required in the Family Service Plans; both parents tested positive for illegal drugs; and the Father pleaded guilty to injury to the Child. Nash also testified that the foster family wished to adopt the Child.

The Child was originally placed with his maternal aunt. When the aunt was asked to submit to a drug test, she relinquished the Child. Although the Department had an approved home study for the maternal great aunt, upon further investigation, the Department learned that the great aunt did not have sufficient income to support the Child. The Department did not consider the maternal grandmother for a potential placement because the Child's injuries occurred in her home. The current foster placement was meeting all of the Child's needs. Nash testified that it was in the best interest of the Child to remain in the foster home.

Mark Johnson, a caseworker who was assigned approximately one month before trial, testified that the Mother had not shown proof of employment or housing, and the Father had completed none of his service plan. The Mother and grandmother visited the Child once in the month before trial, but the Father had not been visiting. At the time of trial the Child was clean, healthy, and in a safe environment. Johnson testified that in his opinion it was in the best interest of the Child to terminate the parents' rights and leave the Child in the foster home with the goal of adoption.

The Mother testified that three weeks before the Child was removed from her she had taken him to the doctor because the Child seemed to be fussy when picked up on one side. The doctor or his assistant examined the child, diagnosed gas, and recommended over-the-counter medication. The Mother explained that she had not bathed the Child in two weeks because she was afraid the Child would become ill from taking a bath during the winter. The Mother had one job, but was fired after she was called for a random drug test. Since leaving that job she has

been unemployed but looking for work. She visited the Child up to two times per month. The Mother testified that if the Child could not be returned to her, she preferred him to be placed with her mother.

The Father testified that the Child's injuries occurred when he was putting the Child in his crib. The Father picked the Child up because he was crying; when he started to place the Child back in the crib, the Child began to fall and the Father squeezed him tightly. When questioned about his earlier story of squeezing the Child to prevent him from falling down the stairs, the Father testified the Child could have been injured at that time as well. He denied giving inconsistent accounts of how the Child was injured.

The Child's maternal grandmother filed a petition in intervention seeking sole managing conservatorship of the Child. The Child's aunt and great aunt testified on behalf of the grandmother's intervention. They both testified that the grandmother was best suited to take the Child. The Child's grandmother testified that the Child was injured in her house, but after the injuries were discovered she requested that the Mother and Father move out of her house. She requested that the Department perform a home study on her home, and asked that she be named sole managing conservator of the Child.

At the conclusion of the trial the trial court terminated both parents' rights and named the Department sole managing conservator.

## II.  ANALYSIS OF THE MOTHER'S APPEAL

In her sole issue on appeal the Mother argues the evidence was factually insufficient to support the trial court's finding that termination of her rights is in the Child's best interest. Parental rights can be terminated upon proof by clear and convincing evidence that (1) the parent has committed an act prohibited by section

161.001(1) of the Family Code; and (2) termination is in the best interest of the child. Tex. Fam. Code Ann. § 161.001(1), (2) (West 2014); *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009).

Involuntary termination of parental rights is a serious matter implicating fundamental constitutional rights. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *In re D.R.A.*, 374 S.W.3d 528, 531 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Although parental rights are of constitutional magnitude, they are not absolute. *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002) ("Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right.").

Due to the severity and permanency of the termination of parental rights, the burden of proof is heightened to the clear and convincing evidence standard. *See* Tex. Fam. Code Ann. § 161.001; *In re J.F.C.*, 96 S.W.3d 256, 265–66 (Tex. 2002). "Clear and convincing evidence" means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007 (West 2014); *In re J.F.C.*, 96 S.W.3d at 264. This heightened burden of proof results in a heightened standard of review. *In re C.M.C.*, 273 S.W.3d 862, 873 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

In reviewing the factual sufficiency of the evidence, we consider and weigh all of the evidence, including disputed or conflicting evidence. *In re J.O.A.*, 283 S.W.3d at 345. "If, in light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id*. We give due deference

to the fact finder's findings and we cannot substitute our own judgment for that of the fact finder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). The fact finder is the sole arbiter when assessing the credibility and demeanor of witnesses. *Id.* at 109.

### A. Unchallenged Predicate Termination Findings

The trial court made predicate termination findings that the Mother had committed acts establishing the grounds set out in subsections D, E, and O of section 161.001(1), which provide that termination of parental rights is warranted if the fact finder finds by clear and convincing evidence, in addition to the best-interest finding, that the parent has:

> (D) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child;

> (E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child; [or]

> \* \* \* \* \*

> (O) failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child[.]

Tex. Fam. Code Ann. § 161.001(1)(D),(E), (O).

The Mother concedes that sufficient evidence supports the predicate termination finding under section 161.001(1)(O). Unchallenged predicate findings are binding on the appellate court. *See In re E.A.F.*, 424 S.W.3d 742, 750 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). The unchallenged predicate finding

can therefore support the best interest finding. *See In re C.H.,* 89 S.W.3d at 28 (holding that the same evidence may be probative of both section 161.001(1) predicate grounds and best interest).

## B.     Best Interest of the Child

A strong presumption exists that the best interest of the child is served by keeping the child with its natural parent, and the burden is on the Department to rebut that presumption. *In re U.P.,* 105 S.W.3d 222, 230 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). The factors the trier of fact may use to determine the best interest of the child include: (1) the desires of the child; (2) the present and future physical and emotional needs of the child; (3) the present and future emotional and physical danger to the child; (4) the parental abilities of the persons seeking custody; (5) the programs available to assist those persons seeking custody in promoting the best interest of the child; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) acts or omissions of the parent which may indicate the existing parent-child relationship is not appropriate; and (9) any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *In re U.P.,* 105 S.W.3d at 230; *see also* Tex. Fam. Code Ann. § 263.307(b) (West 2014) (listing factors to consider in evaluating parents' willingness and ability to provide the child with a safe environment).

There is a strong presumption that the best interest of a child is served by keeping the child with his or her natural parent. *In re R.R.,* 209 S.W.3d 112, 116 (Tex. 2006); *In re D.R.A.,* 374 S.W.3d at 533. Prompt and permanent placement of the child in a safe environment is also presumed to be in the child's best interest. Tex. Fam. Code Ann. § 263.307(a).

The Mother contends that the presumption in her favor is not rebutted

because termination was primarily based on physical abuse of the Child, but no health care professional testified at trial, nor were any medical records admitted into evidence. Although Dr. Isaac testified at the show cause hearing, her testimony was not admitted at trial. In assessing the evidence in support of a ruling from a final trial, testimony from prior hearings that is not admitted into evidence at trial is not part of the evidence we may consider in support of the trial court's ruling.[1] *See In re M.C.G.*, 329 S.W.3d 674, 675 (Tex. App.—Houston [14th Dist.] 2010, pet. denied).

While Dr. Isaac did not testify at trial, Nash testified that the Child was taken to the hospital with healing rib fractures. Nash further testified without objection that the doctor reported the fractures were 10 to 14 days old. Moreover, the record reflects that the termination of parental rights was not based solely on the injury to the Child. We review the applicable *Holley* factors below.

### 1.     Needs of and Danger to the Child

With regard to the present and future emotional and physical needs of the Child and the present and future emotional and physical danger to the child, the Mother points out that the Child made a full recovery from his injuries and is doing well in his adoptive placement. The Mother argues that she acted responsibly when she took the Child to the doctor three weeks earlier when he was "fussy," and that she acted responsibly when she took him to the hospital when she saw his later injuries. She argues it is undisputed that she did not cause the Child's injuries, and that while the evidence of endangerment against the Father is overwhelming, the same evidence against her is speculative. To the contrary, there was testimony at trial that the rib fractures were healing at the time the Child was seen in the

---

[1] Although we included information from prior hearings in the factual background, our analysis of the best interest of the Child is based on the trial record and exhibits admitted at trial.

10

hospital, and that the Mother did not seek medical attention when the Child's ribs were broken. There was further testimony that the rash under the Child's arm was due to lack of hygiene.

Nash and the Mother both testified that the Mother is not attending therapy sessions as required by the Family Service Plan. The Mother argued that she had been discharged from therapy because the Department would not pay the therapist. Nash, however, testified that the Mother was unsuccessfully discharged from therapy, and did not complete the treatment.

The record contains exhibits detailing the results of the Mother's drug tests. The tests reported one positive test for marijuana on December 17, 2013, a positive test for benzoylecgonine, cocaine, and marijuana on May 20, 2014, and a positive test for benzoylecgonine and cocaine on August 28, 2014. The Father also had a positive result for benzoylecgonine, cocaine, and marijuana on August 28, 2014. A parent's drug use supports a finding that termination is in the best interest of the child. *See In re M.R.*, 243 S.W.3d 807, 821 (Tex. App.—Fort Worth 2007, no pet.). Moreover, the affidavit attached to the original petition for termination listed a criminal history for the Mother including two convictions for "Failure to ID fugitive," theft by check, and tampering with a government document.

## 2. Stability and Compliance with Services

The Mother conceded that sufficient evidence exists to support termination under section 161.001(1)(O), which addresses compliance with the Family Service Plan. Such evidence can also be considered in support of a finding that termination is in the best interest of the child. *See In re C.H.*, 89 S.W.3d at 27. In determining the best interest of a child in proceedings for termination of parental rights, the trial court may properly consider that the parent did not comply with the court-ordered service plan for reunification with the Child. *See In re E.C.R.*, 402 S.W.3d 239,

11

249 (Tex. 2013) ("Many of the reasons supporting termination under subsection O also support the trial court's best interest finding.").

The record contains evidence that the Mother attempted to complete a portion of the service plan. However, the record also contains evidence of the Mother's positive drug tests, her inability to maintain employment, and her inability to provide stable housing. These factors weigh in favor of the trial court's finding that termination is in the best interest of the Child.

### 3.    Child's Desires and Proposed Placement

The Child was less than two years old at the time of trial and unable to express his desires. When a child is too young to express his desires, the factfinder may consider that the child has bonded with the foster family, is well cared for by them, and has spent minimal time with a parent. *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

The stability of the proposed home environment is an important consideration in determining whether termination of parental rights is in the child's best interest. *See In re J.N.R.*, 982 S.W.2d 137, 143 (Tex. App.—Houston [1st Dist.] 1998, no pet.). A child's need for permanence through the establishment of a "stable, permanent home" has been recognized as the paramount consideration in a best interest determination. *See In re K.C.*, 219 S.W.3d 924, 931 (Tex. App.—Dallas 2007, no pet.). Therefore, evidence about the present and future placement of the Child is relevant to the best interest determination. *See In re C.H.*, 89 S.W.3d at 28.

Both Nash and Johnson testified that the Child was placed in an adoptive foster home. The adoptive foster home is safe and stable and his emotional and physical needs are being met. The Child's injuries have healed, and he has bonded

with the foster parents. These factors weigh in favor of the trial court's finding.

### 4. Parenting Abilities and Family Support

We may also consider the Mother's past performance as a parent in evaluating her ability to provide for the Child and the trial court's determination that termination of her parental rights would be in the Child's best interest. *See In re C.H.*, 89 S.W.3d at 28.

The Mother argues that she was not present when the Child was injured and she took him to the hospital as soon as she realized he was injured. The Mother's sister, aunt, and mother testified in support of placing the Child with his maternal grandmother. The record reflects, however, that the sister relinquished the Child when asked to submit to a drug test, the aunt did not have sufficient income or verifiable employment, and the grandmother's home was unsuitable because it is where the original injuries occurred. The Mother attended parenting classes and visited the Child with her mother as often as twice per month. Although the Mother was attempting to improve her parenting skills, the record does not reflect strong family support.

The record contains evidence supporting the best interest finding based on the Mother's drug use, history of neglect, lack of stable employment, and failure to comply with court-ordered services. *See In re S.B.*, 207 S.W.3d 877, 887–88 (Tex. App.—Fort Worth 2006, no pet.) (considering the parent's drug use, inability to provide a stable home, and failure to comply with a family service plan in holding the evidence supported the best interest finding). Based on the evidence presented, the trial court could have reasonably formed a firm belief or conviction that terminating the Mother's parental rights was in the Child's best interest so that he could promptly achieve permanency in his life through adoption by the foster family. *See In re T.G.R.-M.*, 404 S.W.3d 7, 17 (Tex. App.—Houston [1st Dist.]

2013, no pet.); *In re M.G.D.*, 108 S.W.3d 508, 513–14 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).

Applying the applicable *Holley* factors to the evidence, we conclude that factually sufficient evidence supports the trial court's finding that termination of the Mother's parental rights was in the best interest of the Child. We overrule the Mother's sole issue on appeal.

### III.    ANALYSIS OF THE FATHER'S APPEAL

The Father's appointed counsel filed a brief in which he concludes the appeal is wholly frivolous and without merit. The brief meets the requirements of *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396 (1967), presenting a professional evaluation of the record demonstrating why there are no arguable grounds to be advanced. *See High v. State*, 573 S.W.2d 807 (Tex. Crim. App. 1978). The *Anders* procedures are applicable to an appeal from the termination of parental rights when an appointed attorney concludes that there are no non-frivolous issues to assert on appeal. *In re D.E.S.*, 135 S.W.3d 326, 329 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

On March 23, 2015, a copy of the record and counsel's brief were delivered to the Father and the Father was notified of the right to file a pro se response. *See id.* at 329–30. More than 25 days have elapsed and as of this date, no pro se response has been filed.

We have carefully reviewed the record and counsel's brief and agree the Father's appeal is wholly frivolous and without merit. Further, we find no reversible error in the record. A discussion of the brief would add nothing to the jurisprudence of the state.

14

We affirm the trial court's judgment.


/s/    William J. Boyce
             Justice


Panel consists of Justices Boyce, McCally, and Donovan.