**Affirmed and Memorandum Opinion filed September 15, 2015.**



In The

# Fourteenth Court of Appeals

## NO. 14-15-00352-CV

## IN THE INTEREST OF S.S.B. AND R.D., III, Children

**On Appeal from the 313th District Court
Harris County, Texas
Trial Court Cause No. 2014-00611J**

## M E M O R A N D U M   O P I N I O N

R.T.B. ("the mother") appeals the trial court's judgment terminating her parental rights to her children, S.S.B. and R.D., III.[1] R.D., Jr. ("the father") separately appeals the trial court's judgment terminating his parental rights to R.D., III. We affirm the trial court's judgment as to both the mother and the father.

---

[1] W.B., the father of S.S.B., executed an affidavit of voluntary relinquishment and the trial court terminated his parental rights. *See* Tex. Fam. Code Ann. § 161.001(1)(K), (2) (West 2014). W.B. has not appealed the trial court's judgment.

# I.      THE MOTHER'S APPEAL

Appellee, the Department of Family & Protective Services, moved to have the parental rights of the mother terminated. *See* Tex. Fam. Code Ann. § 161.001 (West 2014). The trial court terminated the mother's parental rights on the grounds that the mother (1) knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered the children's physical or emotional well-being (section 161.001(1)(D)); (2) engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered the physical or emotional well-being of the children (section 161.001(1)(E)); (3) had her parent-child relationship terminated with respect to another child based on a finding that the parent's conduct was in violation of paragraph (D) or (E) (section 161.001(1)(M)); and (4) failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of the children (section 161.001(1)(O)). The trial court also determined that it is in the children's best interest to terminate the mother's parental rights (section 161.001(2)). *Id.* §§ 161.001(1)(D), (E), (M) & (O); 161.001(2).

The mother's appointed counsel filed a brief in which counsel concludes the appeal is wholly frivolous and without merit. The brief meets the requirements of *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396 (1967), presenting a professional evaluation of the record demonstrating why there are no arguable grounds to be advanced. *See High v. State*, 573 S.W.2d 807 (Tex. Crim. App. 1978). The *Anders* procedures are applicable to an appeal from the termination of parental rights when an appointed attorney concludes that there are no non-frivolous issues to assert on appeal. *In re D.E.S.*, 135 S.W.3d 326, 329 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

On June 18, 2015, a copy of the record and counsel's brief were provided to the mother and the mother was notified of the right to file a pro se response. *See Stafford v. State*, 813 S.W.2d 503, 510 (Tex. Crim. App. 1991); *In re D.E.S.*, 135 S.W.3d at 329–30. As of this date, no pro se response has been filed.

We have carefully reviewed the record and counsel's brief and agree the mother's appeal is wholly frivolous and without merit. Further, we find no reversible error in the record. A discussion of the brief would add nothing to the jurisprudence of the state. Accordingly, we affirm the trial court's judgment terminating the mother's parental rights to S.S.B. and R.D., III.

## II. THE FATHER'S APPEAL

The Department also moved for termination of the father's parental rights. *See* Tex. Fam. Code Ann. § 161.001. Following a hearing, the trial court terminated the father's parental rights on the grounds that the father (1) knowingly placed or knowingly allowed R.D., III to remain in conditions or surroundings which endangered the child's physical or emotional well-being (section 161.001(1)(D)); (2) engaged in conduct or knowingly placed R.D., III with persons who engaged in conduct which endangered the physical or emotional well-being of the child (section 161.001(1)(E)); and (3) failed to comply with the provisions of a court order that specifically established the actions necessary for the father to obtain the return of R.D., III (section 161.001(1)(O)). The trial court also determined that it is in R.D., III's best interest to terminate the father's parental rights (section 161.001(2)). *Id*. §§ 161.001(1)(D), (E) & (O); 161.001(2). On appeal, the father asserts the evidence is legally and factually insufficient to support the trial court's judgment on one of the three statutory grounds for termination. *See id*. § 161.001(1)(O). The father also challenges the trial court's decision that termination is in R.D. III's best interest. *See id*. § 161.001(2).

3

## A. Burden of Proof and Standards of Review

Parental rights can be terminated upon proof by clear and convincing evidence that (1) the parent has committed an act prohibited by section 161.001(1) of the Family Code; and (2) termination is in the best interest of the child. *Id.* § 161.001(1), (2); *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009). Clear and convincing evidence is that measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. Tex. Fam. Code Ann. § 101.007 (West 2014); *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). This heightened burden of proof results in a heightened standard of review. *In re C.H.*, 89 S.W.3d at 26 ("[T]he appellate standard for reviewing termination findings is whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations."); *see also In re C.M.C.,* 273 S.W.3d 862, 873 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

In a legal-sufficiency review, we consider all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.F.C.,* 96 S.W.3d 256, 266 (Tex. 2002). This means we must assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *Id.* We disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible, but we do not disregard undisputed facts, regardless of whether they support the finding. *Id.* If we determine no reasonable factfinder could form a firm belief or conviction the matter to be proven is true, we must conclude the evidence is legally insufficient. *Id.*

In a factual-sufficiency review, we give due consideration to evidence the factfinder reasonably could have found to be clear and convincing. *Id.* Our inquiry

is whether the evidence is such that a factfinder reasonably could form a firm belief or conviction about the truth of the Department's allegations. *Id.* We consider whether disputed evidence is such that a reasonable factfinder could not have resolved that evidence in favor of its finding. *Id.* If, in light of the entire record, the disputed evidence is so significant that the factfinder could not reasonably have formed a firm belief or conviction, we must find the evidence is factually insufficient. *Id.*

### B. The Evidence Relating to the Father

Test results were admitted into evidence reflecting the father tested positive for drugs on January 22, 2014, February 18, 2014, April 1, 2014, July 15, 2014, and October 28, 2014. Trial was held in March 2015.

The father testified that he was 22 years of age at the time of trial. He was present at the hospital when R.D., III was born. The father was currently living with his grandmother, where he had lived since 2011. He testified that her house had room for his son and that his grandmother was agreeable to R.D., III living in her home.

The father testified that when he was using drugs, his "drug of choice" was powdered cocaine, and he smoked marijuana and PCP. The father admitted that he chose drugs over his child. According to the father, he used drugs for the last time on the weekend before December 1, 2014. He had used marijuana since he was fifteen years old and cocaine since he was seventeen years old. In December 2014, the father entered a rehabilitation facility for the first time for a thirty-day inpatient program. He testified that he has attended over forty Narcotics Anonymous meetings since his release on January 12, 2015, from rehabilitation. At the time of trial, the father was participating in outpatient therapy. He was attending a relapse

5

prevention program twice a week, and had individual counseling once a month. According to the father's trial testimony, he had not used drugs for 109 days.

When asked if he would agree that he had not successfully completed his family plan of service as of trial, the father said, "I am completing my service." He testified that he finished individual therapy.

The father had enrolled at Houston Community College. He began attending classes the month before trial. He testified that he was not in contact with his peers who were involved in drugs. The father spoke to his sponsor daily.

At the time of trial, the father was working at the Goodyear Chemical Plant five days a week, from 7:00 a.m. to 3:30 p.m. The father's stated plan for child-care while he worked was, "I have my mother, as a support system; my grandmother and my aunt; and I have uncles, alter their schedules in order to help me get my son back." The father's plan for child-care while he attended meetings was for his sister to care for R.D., III. The father testified he has attended all scheduled visits with R.D., III and has completed parenting classes. He brought clothes, toys, and shoes to R.D., III and S.S.B.

The father testified that he would protect R.D., III from the child's mother. The mother has attempted to contact the father but he has not responded, and the father changed his phone number. The father also testified that during pendency of this case, he lived with the mother.

The father did not provide the names of any of the additional family members so R.D., III could be placed with family. He said it was because he had to ask the individuals first. No names or information about these additional family members were provided at trial. There was evidence that there were relatives who wanted to take R.D., III but the Department desired to keep the children together.

6

The caseworker testified the children were currently placed together in a foster home that wanted to adopt both children. The children had been in care of the Department since February 2014. Initially, they were placed with the father's mother but were removed for medical neglect. R.D., III had not been to the doctor and had not received his immunization shots. S.S.B.'s skin was covered with sores from acute eczema and she was not being cared for properly. The father's mother wanted S.S.B. moved because she could not handle the child's behavior. Both children were moved.

The caseworker testified that the father had a drug test the month before trial that was negative. The caseworker also testified that the father tested positive for drugs throughout the pendency of this case. According to the caseworker, the father's conduct endangered R.D., III. She testified that other conduct also endangered R.D., III , namely the father's request that the mother's visits be again joined with his visits. Because of the mother's conduct during visits, the visits had been separated. When joint visits were reinstituted, the mother's conduct still was problematic but the father only apologized.

The caseworker testified that the father failed to complete all the recommendations from his psychosocial evaluation, failed to maintain six months of stable employment or housing, and had not met the requirement to attend ninety Narcotics Anonymous meetings in ninety days. The caseworker did not believe the father had successfully completed his family plan of service. The Department asked the trial court to terminate the father's parental rights based on his endangering conduct of continuing to test positive for drugs throughout the pendency of this case and his failure to successfully complete his family plan of service.

7

The caseworker also testified that it was in R.D., III's best interest that the father's rights be terminated. According to the caseworker, R.D., III needs stability. The child's foster parent is willing to adopt. The caseworker testified that R.D., III and S.S.B. are very bonded, "only know each other through this whole year of being in care," and are doing well. The caseworker stated that it is in the children's best interest to remain together. The caseworker stated R.D., III also has eczema; the child is getting good care. Both children are anemic and they are in a home with foster parents who will monitor their condition. R.D.,III carries the trait for sickle cell anemia. The caseworker testified the physical and emotional needs of both children are being met and they are in a stable home that is drug-free and safe.

The caseworker acknowledged that since the father left rehabilitation he had tested negative for drugs. The caseworker agreed the father's act of changing his phone number to protect himself from the mother signaled progress. Noting the recency of the father's employment, the caseworker testified the father had not met the requirement of his family service plan for stable housing and employment. The caseworker agreed the father was attending Narcotics Anonymous meetings but the caseworker testified that he does not attend daily. To her knowledge, the father complied with court orders and attended all scheduled visits with the child. She acknowledged that the father brought the children toys and clothing and agreed that the father was attentive and loving toward them.

The caseworker was asked, "You've never made any effort to return [R.D., III] to the father, correct?" She replied "Yes, we made efforts. We kept sending him and referring him for services. We referred him for substance abuse therapy. We referred him for the substance abuse assessment. We referred him for substance abuse individual therapy -- . . . Those were our efforts to help him

8

complete his family plan of service and in the hopes of him regaining custody of his child."

The caseworker was aware the father voluntarily entered rehabilitation and he gave her a copy of his certificate of completion. The father has kept her apprised of his attendance at Narcotics Anonymous meetings. She knew the father was actively participating in an outpatient relapse prevention program and the caseworker had received an e-mail from the father's outpatient counselor indicating the father had acquired relapse prevention skills.

### C. Statutory Grounds

The father has not challenged the sufficiency of the evidence to support termination of his parental rights under subsections (D) and (E). Because the judgment could be upheld on these unchallenged grounds, we uphold the judgment concerning the statutory grounds for termination and do not address the father's challenge to the sufficiency of the evidence under subsection (O). *See Fletcher v. Dep't of Family & Protective Servs.,* 277 S.W.3d 58, 64 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (citing *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993); *Perez v. Tex. Dep't of Protective & Regulatory Servs.*, 148 S.W.3d 427, 433–34 (Tex. App.—El Paso 2004, no pet.)). *See also Conti v. Texas Dept. of Family & Protective Services,* 01-10-00185-CV, 2011 WL 286143, at *4 (Tex. App.—Houston [1st Dist.] Jan. 27, 2011, pet. denied) (mem. op.). Accordingly, we overrule the father's first issue.

### D. Best Interest of the Child

In his second issue the father challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination of his parental rights is in R.D., III's best interest. A strong presumption exists that the best

interest of the child is served by keeping the child with the child's natural parent, and the burden is on the Department to rebut that presumption. *In re U.P.*, 105 S.W.3d 222, 230 (Tex. App.–Houston [14th Dist.] 2003, pet. denied). Proof of acts or omissions under section 161.001(1) is probative of the issue of the child's best interest. The factors the trier of fact may use to determine the best interest of the child include: (1) the desires of the child; (2) the present and future physical and emotional needs of the child; (3) the present and future emotional and physical danger to the child; (4) the parental abilities of the persons seeking custody; (5) the programs available to assist those persons seeking custody in promoting the best interest of the child; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) acts or omissions of the parent that may indicate the existing parent-child relationship is not appropriate; and (9) any excuse for the parents' acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *In re U.P.*, 105 S.W.3d at 230; *see also* Tex. Fam. Code Ann. § 263.307(b) (West 2014) (listing factors to consider in evaluating parents' willingness and ability to provide the child with a safe environment). A finding in support of "best interest" does not require proof of any unique set of factors, nor does it limit proof to any specific factors. *See Holley,* 544 S.W.2d at 371–72.

We begin with the presumption that R.D., III's best interest is served by keeping him with his natural parent. *See In re D.R.A.*, 374 S.W.3d 528, 533 (Tex. App.—Houston [14th Dist.] 2012, no pet.). We also presume that prompt and permanent placement of the child in a safe environment is in the child's best interest. *See* Tex. Fam. Code Ann. § 263.307(a) (West 2014).

**1. Needs of and Danger to the Child**

With regard to R.D., III's present and future emotional and physical needs, and the present and future emotional and physical danger to R.D., III, the record reflects the father used drugs both before and after the child's birth. By the father's own admission, he did not enter rehabilitation until December 2014, a year after R.D., III came into the Department's care and only three months before trial. The father continued to use drugs during that year and repeatedly tested positive for drugs. The caseworker testified that the father's drug use endangered R.D., III. Accordingly, this factor weighs in favor of the trial court's finding.

**2. Stability and Compliance with Services**

In determining the best interest of the child in proceedings for termination of parental rights, the trial court may properly consider that the parent did not comply with the court-ordered service plan for reunification with the child. *See In re E.C.R.*, 402 S.W.3d 239, 249 (Tex. 2013). The caseworker testified the father failed to successfully complete his family plan of service. Although the father argues he substantially complied with the service plan, his repeated positive drug tests establish otherwise. Further, the father did not obtain employment until after leaving rehabilitation in January 2014. The caseworker testified this employment did not satisfy the requirement for stable employment as it was too recent. We therefore conclude this factor weighs in favor of the trial court's finding.

**3. Child's Desires and Proposed Placement**

Because R.D., III was approximately fourteen months old at the time of trial, he was unable to express his desires with respect to a preferred placement. When a child is too young to express his desires, the factfinder may consider that the child has bonded with the foster family, is well cared for in the current placement, and

11

has spent minimal time with a parent. *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.–Houston [14th Dist.] 2014, no pet.). The stability of the proposed home environment is an important consideration in determining whether termination of parental rights is in the child's best interest. *See In re J.N.R.,* 982 S.W.2d 137, 143 (Tex. App.–Houston [1st Dist.] 1998, no pet.). A child's need for permanence through the establishment of a "stable, permanent home" has been recognized as the paramount consideration in the best-interest determination. *See In re K.C.,* 219 S.W.3d 924, 931 (Tex. App.–Dallas 2007, no pet.). Therefore, evidence about the present and future placement of the child is relevant to the best-interest determination. *See In re C.H.*, 89 S.W.3d at 28.

We note that the father never had care of R.D., III. Although the father testified he had family members who would support him in caring for the child, the father never identified those persons as placement options while the case was pending. No information about those family members was ever provided. The father's plan for child-care included his mother, from whose care R.D., III previously had been removed for medical neglect. The father continued to live with R.D., III's mother during part of the time this case was pending and they both continued using drugs during that period. In the three months preceding trial, the father resided at a rehabilitation facility for thirty days and then lived with his grandmother. The father had not maintained stable housing for six months.

The caseworker testified R.D., III is currently in a foster home with his half-sister and the foster parent would like to adopt both children. The record reflects R.D., III is bonded to his half-sister. The foster home is drug free, safe, and all of R.D., III's physical and emotional needs are being met. This factor weighs in favor of the trial court's finding.

12

## 4. Parenting Abilities and Family Support

The father testified that he completed parenting classes, attended all scheduled visits with R.D., III, and brought items for the children when he would visit. The caseworker testified the father was loving and attentive at visits. According to the father, he has his mother, grandmother, aunt, and uncles as family support. None of these family members were suggested as placement options while the case was pending. Although both children initially were placed with the father's mother, they were removed for medical neglect and she wanted S.S.B. moved because she could not handle the child's behavior. Accordingly, this factor also weighs in favor of the trial court's finding.

Applying the applicable *Holley* factors to the evidence, we conclude that legally and factually sufficient evidence supports the trial court's finding that termination of the father's rights is in the best interest of R.D., III. *See In re S.B.,* 207 S.W.3d 877, 887–88 (Tex. App.–Fort Worth 2006, no pet.) (considering the parent's drug use, inability to provide a stable home, and failure to comply with a family service plan in holding the evidence supported the best-interest finding). Based on the evidence presented, the trial court reasonably could have formed a firm belief or conviction that terminating the father's rights was in R.D., III's best interest so that the child could promptly achieve permanency through adoption by a foster family. *See In re T.G.R.–M.*, 404 S.W.3d 7, 17 (Tex.App.–Houston [1st Dist.] 2013, no pet.); *In re M.G.D.*, 108 S.W.3d 508, 513–14 (Tex.App.–Houston [14th Dist.] 2003, pet. denied). Therefore, we overrule the father's second issue and affirm the trial court's judgment terminating the father's parental rights to R.D., III.

The judgment of the trial court is affirmed.


/s/     Kem Thompson Frost
        Chief Justice


Panel consists of Chief Justice Frost and Justices Christopher and Donovan.

14