**Affirmed and Memorandum Opinion filed April 26, 2016.**



In The

# Fourteenth Court of Appeals

### NO. 14-15-01012-CV

## IN THE INTEREST OF A.O.M. AND J.X.M., CHILDREN

**On Appeal from the 314th District Court
Harris County, Texas
Trial Court Cause No. 2014-06157J**

## M E M O R A N D U M   O P I N I O N

This appeal is brought by J.M., III ("Jerry") and A.M. ("Audrey") from an order terminating their parental rights to their children, A.O.M. ("Alex") and J.X.M. ("Joyce").[1]  *See* Tex. Fam. Code Ann. § 161.001 (West, Westlaw through 2015 R.S.).

The Texas Department of Family and Protective Services ("the Department") petitioned the trial court to terminate both parents' parental rights,

---

[1] We use pseudonyms to refer to appellants and their children in this case. *See* Tex. Fam. Code Ann. § 109.002(d) (West, Westlaw through 2015 R.S.); Tex. R. App. P. 9.8.

citing several grounds for termination. The trial court heard evidence and subsequently terminated Jerry's and Audrey's parental rights on the grounds that they (1) knowingly placed or allowed Alex and Joyce to remain in conditions or surroundings that endangered the children's physical or emotional well-being (section 161.001(b)(1)(D)); (2) engaged in conduct or knowingly placed Alex and Joyce with persons who engaged in conduct that endangered the children's physical or emotional well-being (section 161.001(b)(1)(E)); (3) have been the major cause of the failure of the children to be enrolled in school (section 161.001(b)(1)(J)); and (4) failed to comply with the provisions of a court order that specifically established the actions necessary for the return of Alex and Joyce (section 161.001(b)(1)(O)). The trial court also determined that it is in the best interest of Alex and Joyce to terminate Jerry's and Audrey's parental rights (section 161.001(b)(2)). *Id*. §§ 161.001(b)(1)(D), (E), (J) & (O); 161.001(2). Jerry challenges the sufficiency of the evidence to support the trial court's judgment under subsections (D), (E), and (O) but not (J). Audrey concedes the evidence is legally and factually sufficient to support the trial court's judgment under subsection (O) but challenges the sufficiency of the evidence as to subsections (D), (E) and (J). Both parents challenge the trial court's decision that termination is in the best interest of Alex and Joyce. *See id*. § 161.001(b)(2).

## A. Burden of Proof and Standards of Review

Parental rights can be terminated upon proof by clear and convincing evidence that (1) the parent has committed an act prohibited by section 161.001(b)(1) of the Family Code, and (2) termination is in the best interest of the child. *Id*. § 161.001(b)(1), (2); *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009). Clear and convincing evidence is that measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the

2

allegations sought to be established. Tex. Fam. Code Ann. § 101.007 (West, Westlaw through 2015 R.S.); *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). This heightened burden of proof results in a heightened standard of review. *In re C.H.*, 89 S.W.3d at 26 ("[T]he appellate standard for reviewing termination findings is whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations."); *see also In re C.M.C.,* 273 S.W.3d 862, 873 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

In a legal-sufficiency review, we consider all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.F.C.,* 96 S.W.3d 256, 266 (Tex. 2002). This means we must assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *Id*. We disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible, but we do not disregard undisputed facts, regardless of whether they support the finding. *Id*. If we determine no reasonable factfinder could form a firm belief or conviction the matter to be proven is true, we must conclude the evidence is legally insufficient. *Id.*

In a factual-sufficiency review, we give due consideration to evidence the factfinder reasonably could have found to be clear and convincing. *Id.* Our inquiry is whether the evidence is such that a factfinder reasonably could form a firm belief or conviction about the truth of the Department's allegations. *Id*. We consider whether disputed evidence is such that a reasonable factfinder could not have resolved that evidence in favor of its finding. *Id.* If, in light of the entire record, the disputed evidence is so significant that the factfinder could not reasonably have formed a firm belief or conviction, we must find the evidence is factually insufficient. *Id.*

## B. The Evidence

Detective David Nettles of the Webster Police Department testified the investigation began with a cyber-tip alleging possible child sexual assault by Jerry and Audrey against their children, Alex and Joyce. At the time of trial, Alex was eleven years old and Joyce was seven years old. The investigation revealed there was no physical evidence of child sexual assault. Still, Nettles was concerned by comments found in a joint internet "chat" account belonging to Jerry and Audrey.

A witness, "Ike," described by Nettles as credible, was interviewed and Ike stated that Jerry had asked him to have sexual contact with Joyce, who was six years old at the time. When Nettles questioned Jerry, he denied the allegation but admitted to knowing Ike. Jerry said he met Ike online and they agreed to meet so that Jerry could bring Ike to Jerry's residence. Jerry claimed that Ike had made advances toward Joyce. Jerry then brought Ike into his home for the purpose of Ike having sex with Audrey.

The police obtained a search warrant for the internet history of Jerry and Audrey. The resulting search revealed that many of the messages regarded child abuse, sexual child abuse, bestiality, or incest. Jerry claimed it was "fantasy" and he was interested in helping people. Nettles learned that many men were brought into the home to engage in sexual activities with Jerry and Audrey. Jerry told Nettles that normally he did not have his children in the car with him when he picked up these men.

The home had two bedrooms and, according to Jerry and Audrey, the sexual contact always occurred in their bedroom. They said the children were "typically" asleep in the children's room.

4

The police executed a search warrant on the home and found what appeared to be a marijuana joint on the kitchen table. In the parents' bathroom, they found a box containing a powdery substance that Jerry confirmed was methamphetamine. The substance field-tested positive for methamphetamine. The bathroom was in an area of the home to which Nettles believed the children had access. Audrey admitted to using marijuana and methamphetamines. Jerry told Nettles that he did not use drugs.

The trial court admitted into evidence the court-ordered family plans of service for Jerry and Audrey that detailed the encounter with Ike. Also admitted into evidence were "conversations" between Jerry and Audrey and another individual from the internet account. Jerry admitted to Nettles that the communications were from Jerry's account. The exchanges contain references to incest, child sexual abuse, and bestiality. The search of the home revealed "copious" amount of adult pornography. The covers of the videos uncovered in the search showed pictures of adults engaging in sexual activity and the covers were visible upon entering the parents' bedroom.

Nettles testified that based on his investigation and his discoveries at the home and in the internet account, the parents had not provided a safe and stable home for the children. Further, Nettles believed the children were in danger. Nettles admitted the police found no evidence of incest, bestiality, or sexual assault in the home or any evidence the children were harmed by Jerry's actions in bringing strange men to the home.

Bruce Jefferies, the custodian of records for National Screening Center, testified regarding the results of drug tests performed on Jerry and Audrey. Jerry tested positive for methamphetamines, cocaine, cocaethylene, and marijuana in December 2014. Jefferies testified the amount of methamphetamines was

"extremely high" and had to "be in his body within the last three days" of the test. The amount was indicative of an all-day affair, not just a one-time use. The other positive results indicated more than a one-time use, but not every day. Jerry also tested positive for a high level of alcohol. Several months later, in April 2015, Jerry had no body hair and the only test that could be run was a urine test, which was clean. In September 2015, Jerry was to be tested again but walked out, which the screening center views as a positive drug test.

Audrey tested positive for methamphetamines and marijuana in December 2014. The results were indicative of more than one use of methamphetamines. Tests showed Audrey had not ingested marijuana; the positive read was based on the marijuana environmental exposure, meaning Audrey was in a closed environment with someone who was smoking marijuana. Audrey tested "clean" in January, April, and September 2015.

Laurisha Carroll, the caseworker, testified the children came to the Department's attention following the police investigation. There were concerns the children were being sexually abused and exposed to illegal drugs, and were not attending school.

Ostensibly, Jerry was home-schooling the children. However, when asked for lesson plans or curriculum, Jerry did not provide anything valid. Once the children were placed in the Department's care, they were enrolled in school. Initially, their grades were very poor and they struggled to catch up to grade level. At the time of trial, after being in school for a year, their performance was average.

Audrey was offered a service plan and asked to complete a psychosocial assessment and a psychosexual assessment, and follow any recommendations from the assessments, including getting therapy. The service plan required Audrey to complete parenting classes, a substance and alcohol abuse assessment, domestic

violence counseling, and random drug testing. Carroll testified that Audrey did not complete her substance-abuse assessment. Audrey did complete her psychosocial and psychosexual assessments and it was recommended that she complete individual therapy and participate in the Boundary Group. As of trial, Audrey had not completed those services; she stopped attending classes in September. Audrey was not successfully discharged from individual therapy or the Boundary Group. Audrey completed her parenting classes.

Though employed, Audrey did not have stable housing at the time of trial. She complied with requests to submit to random drug and alcohol tests. Audrey has not provided any financial assistance for the children. The Department asked the court to terminate Audrey's parental rights.

Carroll testified that Jerry's service plan called for him to complete psychosexual assessment and follow any resulting recommendations, including therapy. The service plane also called for Jerry to complete a psychiatric evaluation, parenting classes, a substance abuse assessment, release of information, and a Battering Intervention and Protection Program ("BIPP").

According to Carroll, Jerry never enrolled in a BIPP program. He did not complete the parenting classes or the psychiatric evaluation. Jerry did complete the psychosexual assessment and it was recommended that he complete psychosexual therapy but he never began it. Jerry was not employed and did not have a stable place to live. Jerry had not provided any financial assistance for the children. Jerry failed to comply with court orders for drug testing. The Department asked the court to terminate Jerry's parental rights.

Carroll testified the children were currently placed with Audrey's mother and stepfather. The children were doing very well. Their grades were A's and B's, and they were participating in extracurricular activities, tutoring, and after-school

programs. Carroll had visited the children in their placement and testified they have a very strong bond with their grandparents. According to Carroll, the grandparents were very loving and protective, and were doing everything they could to provide for the children's needs. Carroll testified it was her belief that it would be in the children's best interest for the parents' rights to be terminated.

When the children came into the Department's care, they were sent to the Children's Assessment Center for therapy and psychological evaluation. It was recommended they remain with their maternal grandmother, be placed in therapy, and be referred to the Boys and Girls Club and long-term therapy. It was also recommended there be no visitation with the parents. The children were discharged from therapy and referred to another therapist for long-term therapy.

Carroll did not believe the parents have done all they could to alleviate the Department's concerns and agreed the father has "basically done nothing." Carroll did not believe the parents were able to provide a safe or stable environment. The maternal grandmother was providing such an environment, and it was in the best interest of the children to remain in her home. Both parents had been charged with endangering the welfare of a child. Carroll testified the Department was seeking termination of the parents' parental rights based on their failure to complete services and the current endangerment charges.

Neither Jerry nor Audrey testified. The children's maternal grandmother, "Alicia," testified that she and her husband had been caring for the children during the pendency of the case. When the children came to her home, they were enrolled in school without having to be withdrawn from another school. The children were behind in school. Alicia had not ever had concerns regarding sexual abuse of the children. The children were doing well in her home, and she wanted to provide long-term care for them. Alicia understood the court had ordered no contact

8

between the children and their parents; she had abided by that court order and intended to continue to do so. Alicia testified that she would protect Alex and Joyce from their parents if the children were placed with her permanently. It was Alicia desire to adopt the children. Alicia further stated the children loved their parents and missed them.

Leslie Powell, the child advocate, recommended the rights of both parents be terminated. She, too, testified that termination of parental rights was in the children's best interest because the parents had not done enough to alleviate the concerns that brought the children into the Department's care. Powell had visited with the children in their current placement and they were doing very well. Powell did not discuss with the children how they came into care or their parents; the children never mentioned their parents to Powell and Powell never discussed the children's parents with the children. Powell testified the children did not seem "closed off" about any subjects and were open about school, their activities, and how they liked their living environment.

Lisa McCartney was appointed by the court to assist the ad litem attorneys. She had reviewed all the records and interviewed the grandparents and the children. It was her recommendation that the rights of both parents be terminated.

### C. Statutory Grounds for Termination

Audrey concedes the legal and factual sufficiency of the evidence to support termination of her parental rights under subsection (O). Because the judgment could be upheld on this unchallenged ground, we uphold the judgment concerning the statutory grounds for termination and do not address Audrey's arguments as to (D), (E) or (J). *See In the Interest of N.S.*, 14-15-00601-CV, 2015 WL 9240920, at *3 (Tex. App.—Houston [14th Dist.] Dec. 15, 2015, no pet.) (mem. op.). Accordingly, we overrule Audrey's first and second issues.

9

Jerry does not challenge the sufficiency of the evidence to support termination of his parental rights pursuant to subsection (J). Accordingly, we uphold the judgment concerning the statutory grounds for termination on this unchallenged ground and we do not address Jerry's arguments regarding (D), (E), or (O). *See id.* We overrule Jerry's first and second issues.

### D. Best Interest of the Children

Both Audrey and Jerry challenge the legal and factual sufficiency of the evidence to support the trial court's finding that termination of their parental rights is in the best interest of Alex and Joyce. The factors the trier of fact may use to determine the best interest of each child include: (1) the desires of the child, (2) the present and future physical and emotional needs of the child, (3) the present and future emotional and physical danger to the child, (4) the parental abilities of the persons seeking custody, (5) the programs available to assist those persons seeking custody in promoting the best interest of the child, (6) the plans for the child by the individuals or agency seeking custody, (7) the stability of the home or proposed placement, (8) acts or omissions of the parent that may indicate the existing parent-child relationship is not appropriate, and (9) any excuse for the parents' acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). *See also In re U.P.*, 105 S.W.3d 222, 230 (Tex. App.—Houston [14th Dist.] 2003, pet. denied), and Tex. Fam. Code Ann. § 263.307(b) (West, Westlaw through 2015 R.S.) (listing factors to consider in evaluating parents' willingness and ability to provide the child with a safe environment). A finding in support of "best interest" does not require proof of any unique set of factors, nor does it limit proof to any specific factors. *See Holley*, 544 S.W.2d at 371–72.

We begin with the presumption that the best interest of the child is served by keeping the child with the child's natural parent. *See In re D.R.A.*, 374 S.W.3d

10

528, 533 (Tex. App.—Houston [14th Dist.] 2012, no pet.). The burden is on the Department to rebut that presumption. *See In re U.P.*, 105 S.W.3d at 230. We also presume that prompt and permanent placement of the child in a safe environment is in the child's best interest. *See* Tex. Fam. Code Ann. § 263.307(a) (West, Westlaw through 2015 R.S.).

### 1. Needs of and Danger to the Children

With regard to the present and future emotional and physical needs of Alex and Joyce, and the present and future emotional and physical danger to them, the record contains evidence that Jerry offered an adult male the opportunity to have sex with Joyce, pornography in the home was accessible to the children, and Jerry and Audrey "chatted" repeatedly about engaging in sexual conduct with their children. At the time Alex and Joyce came into the Department's care, both Jerry and Audrey tested positive for drugs, and drugs were discovered in the home, accessible to the children. The children were not enrolled in school when they came into the Department's care. Accordingly, this factor weighs in favor of the trial court's finding.

### 2. Stability and Compliance with Court-Ordered Service Plans

In determining the best interest of the child in proceedings for termination of parental rights, the trial court properly may consider that the parent did not comply with the court-ordered service plan for reunification with the child. *See In re E.C.R.*, 402 S.W.3d 239, 249 (Tex. 2013). The record shows neither Jerry nor Audrey complied with their respective service plans. Jerry failed to enroll in a BIPP program, did not complete the parenting classes or the psychiatric evaluation, and never began psychosexual therapy. Jerry was not employed and had no stable home. Jerry failed to comply with court orders for drug testing. Audrey failed to complete her substance-abuse assessment, individual therapy, and the Boundary

11

Group. Audrey was employed but did not have stable housing. Neither Jerry nor Audrey provided any financial assistance for their children. We therefore conclude this factor weighs in favor of the trial court's finding.

### 3. Children's Desires and Proposed Placement

Alicia testified the children loved their parents and missed them. There was no other evidence as to the children's desires.

The stability of the proposed home environment is an important consideration in determining whether termination of parental rights is in the child's best interest. *See In re J.N.R.,* 982 S.W.2d 137, 143 (Tex. App.—Houston [1st Dist.] 1998, no pet.). A child's need for permanence through the establishment of a "stable, permanent home" has been recognized as the paramount consideration in the best-interest determination. *See In re K.C.,* 219 S.W.3d 924, 931 (Tex. App.—Dallas 2007, no pet.). Therefore, evidence about the present and future placement of the child is relevant to the best-interest determination. *See In re C.H.*, 89 S.W.3d at 28. The record reflects the children were doing well in their placement with their grandparents, Alicia and their step-grandfather. The children were making good grades and were involved in extracurricular activities, as well as tutoring and other after-school programs. Carroll testified the children had a very strong bond with their grandparents. Alicia testified that she desires to adopt the children. We conclude this factor weighs in favor of the trial court's finding.

### 4. Parenting Abilities and Family Support

The record reflects Jerry and Audrey failed to ensure the children were enrolled in school. Both parents were using drugs and had drugs present in the home. The parents' internet account reveals numerous discussions of sexual contact with children, including their own. Neither parent had a stable home nor

provided any financial assistance for the children. Accordingly, this factor also weighs in favor of the trial court's finding.

Applying the applicable *Holley* factors to the evidence, we conclude that legally and factually sufficient evidence supports the trial court's finding that termination of the parental rights of Audrey and Jerry is in the best interest of Alex and Joyce. *See In re S.B.,* 207 S.W.3d 877, 887–88 (Tex. App.–Fort Worth 2006, no pet.) (considering the parent's drug use, inability to provide a stable home, and failure to comply with a family service plan in holding the evidence supported the best-interest finding). Based on the evidence presented, the trial court reasonably could have formed a firm belief or conviction that terminating the rights of Audrey and Jerry was in the best interest of Alex and Joyce so that they could promptly achieve permanency through adoption by a family member. *See In re T.G.R.–M.,* 404 S.W.3d 7, 17 (Tex. App.—Houston [1st Dist.] 2013, no pet.); *In re M.G.D.,* 108 S.W.3d 508, 513–14 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). Therefore, we overrule Audrey's third issue and Jerry's third issue.

Having overruled the appellate issues presented, we affirm the trial court's judgment terminating the parental rights of Audrey and Jerry to their children Alex and Joyce.


/s/    Kem Thompson Frost
Chief Justice


Panel consists of Chief Justice Frost and Justices Boyce and Wise.

13