**Opinion issued March 21, 2013.**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-12-00906-CV

_____

## IN THE INTEREST OF T.G.R.-M.

---

**On Appeal from the 314th District Court**
**Harris County, Texas**
**Trial Court Case No. 2011-04572J**

---

## O P I N I O N

The trial court rendered judgment terminating the parental rights of M.R., the biological mother of T.G.R.-M., and appointing the Department of Family and Protective Services as the sole managing conservator of T.G.R.-M. The mother appeals, contending that the evidence is legally and factually insufficient to support (1) the termination of her parental rights under three statutory grounds found in

section 161.001(1) of the Family Code and (2) the finding that the termination of her parental rights is in the best interest of the child. *See* TEX. FAM. CODE ANN. § 161.001(1), (2) (West Supp. 2012). Because our review of the record shows the evidence is legally and factually sufficient to support the termination of the mother's parental rights, we affirm.

## Background

T.G.R.-M. is the fourth of the mother's five children. The Department has a long history with the mother, having been involved with the mother herself as a child and later with all but one of the mother's five children. For T.G.R.-M., the Department's involvement arose from the mother's physical abuse of T.G.R.-M.'s older sibling, Y.C., about one year before T.G.R.-M.'s birth. T.G.R.-M. was taken into the Department's custody almost two months after his birth based on risk of physical abuse due to the allegation of injury to Y.C. The Department alleged that the mother's conduct, including her physical abuse of Y.C., satisfied the elements of section 161.001(1)(E), section 161.001(1)(L)(ix), and section 161.001(1)(O) of the Family Code for termination of parental rights. *See* TEX. FAM. CODE ANN. § 161.001(1)(E) (termination for "engag[ing] in conduct or knowingly plac[ing] child with persons who engaged in conduct which endangers the physical or emotional well-being of the child"), 161.001(1)(L)(ix) (termination if parent has been convicted or placed on community supervision "for being criminally

2

responsible for the death or serious injury of a child under [section 22.04 of the Penal Code, injury to a child]"), 161.001(1)(O) (termination for failure to comply with court order setting forth actions necessary for parent to obtain return of child in Department's permanent or temporary custody "for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child"). After a bench trial, the trial court terminated the mother's parental rights. The trial court found that termination was warranted under all three subsections of Family Code section 161.001(1) urged by the Department.

At the termination hearing, the caseworker, Ehiomen Etinfoh, explained that law enforcement had been called to an incident in which the mother was allegedly abusing Y.C., who was four years old. Before T.G.R.-M.'s birth, the mother pleaded guilty to the charge of injury to a child arising from the incident with Y.C. and was placed on four years' community supervision. During her community-supervision period and while T.G.R.-M. was in the Department's custody, the mother was arrested on two separate occasions for criminal trespass and burglary of a habitation. The mother was with T.G.R.-M.'s father at the time she was arrested for burglary of a habitation. Although T.G.R.-M.'s father was charged with and later convicted of that offense, the burglary charge and the unrelated criminal-trespass charge against the mother were eventually dismissed. Her arrests nevertheless resulted in her being held in jail for at least four months.

In addition to her testimony regarding the incident that resulted in the mother pleading guilty to the charge of injury to a child, Etinfoh testified that the mother attempted to commit suicide while she was in jail on the injury-to-a-child charge. Etinfoh stated that she believed termination was in the best interest of T.G.R.-M. because the mother could not provide him with a proper, stable environment, her mental status was questionable, she had not completed the recommended psychiatric and psychotherapy treatments, and she was unemployed.

The mother testified regarding her employment status and living accommodations. She stated that she had been unemployed for at least twenty months at the time of trial. The mother was living in an apartment at a transitional home. Although the apartment lease was not in the mother's name, the transitional home generally provided housing for its clients for a period of one year but not to exceed two years. The mother had been in the transitional home for two months before trial and thus could stay in the transitional home for at least another ten months. Before moving into the transitional home, the mother had lived for one month in an emergency shelter, had leased an apartment with T.G.R.-M.'s father, and had, on at least one occasion, been homeless. There was no testimony regarding the mother's plan to obtain stable housing for T.G.R.-M. in the future.

T.G.R.-M.'s foster mother also testified at trial. She explained that the Department had placed T.G.R.-M. and one of his siblings in her home and that

4

T.G.R.-M.'s physical and emotional needs were being satisfied. She described T.G.R.-M. as a "happy baby" who loves to play with his brother and to eat and to laugh. Regarding T.G.R.-M.'s physical needs, his foster mother explained that T.G.R.-M. was undergoing physical therapy because he suffered from occasional stiffness and random movement in his arms and head. T.G.R.-M. had seen a neurologist due to these conditions, and it was recommended that T.G.R.-M. be examined twice yearly for the next three years. The foster mother stated her desire to adopt both T.G.R.-M. and his brother.

At the conclusion of the bench trial, the trial court announced its ruling that the mother's parental rights were terminated. In its termination order, the trial court found that the mother had: (1) "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endanger[ed] the physical or emotional well-being of the child, pursuant to § 161.001(1)(E), Texas Family Code"; (2) "been convicted or ha[d] been placed on community supervision, including deferred adjudication community supervision, for being criminally responsible for the death or serious injury of a child under [§ 22.04, Texas Penal Code (injury to a child)]," pursuant to § 161.001(1)(L)(ix), Texas Family Code; and (3) "failed to comply with the provisions of a court order that specifically established the actions necessary for the mother to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the

[Department] for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child, pursuant to § 161.001(1)(O), Texas Family Code[.]" *See* TEX. FAM. CODE ANN. § 161.001(1)(E), (L)(ix), (O). The trial court further found that terminating the mother's parental rights was in T.G.R.-M.'s best interest. *See id.* § 161.001(2). The trial court also terminated the father's parental rights in accord with his voluntary relinquishment of those rights and named the Department as T.G.R.-M.'s sole managing conservator.[1]

## Termination of Parental Rights

A parent's right to the companionship, care, custody, and management of her child is a constitutional interest. *Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 2060 (2000). Termination proceedings should be strictly scrutinized, and the involuntary termination statutes should be strictly construed in favor of the parent. *Holick v. Smith*, 685 S.W.2d 18, 20−21 (Tex. 1985). However, "the rights of natural parents are not absolute"; "the rights of parenthood are accorded only to those fit to accept the accompanying responsibilities." *In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003) (citing *In re J.W.T.*, 872 S.W.2d 189, 195 (Tex. 1994)). Because a

---

[1] The child's father signed a voluntary relinquishment of his parental rights, designating the Department as managing conservator and consenting to placement of the child for adoption or in substitute care by the Department or a licensed child-placing agency. That part of the trial court's order terminating father's parental rights is not a part of this appeal.

parent may forfeit her parental rights by her acts or omissions, the primary focus of a termination suit is protection of the child's best interests. *Id.*

Proceedings to terminate parental rights under the Family Code require proof by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001; *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009). A court cannot terminate a person's parental rights unless the State proves by clear and convincing evidence that the parent engaged in certain prescribed conduct, as specified in the Family Code, and that the termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(1), (2) (setting forth predicate findings necessary to support judgment of termination); *In re C.H.*, 89 S.W.3d 17, 23 (Tex. 2002). "Clear and convincing evidence" is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2008); *see In re J.F.C.*, 96 S.W.3d 256, 264 (Tex. 2002).

The mother challenges the legal and factual sufficiency of the evidence to support each of the trial court's predicate findings—i.e., the trial court's findings that the mother had engaged in the conduct prescribed by subsections E, O, and L and that termination of the mother's parental rights is in T.G.R.-M.'s best interest. When the legal sufficiency of the evidence supporting the termination of parental rights is challenged, the reviewing court looks at all the evidence in the light most

7

favorable to the termination finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that the finding was true. *J.O.A.,* 283 S.W.3d at 344; *J.F.C.,* 96 S.W.3d at 265–66. The court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *J.O.A.,* 283 S.W.3d at 344; *J.F.C.,* 96 S.W.3d at 266. It should disregard all evidence that a reasonable factfinder could have disbelieved or found to be incredible. *J.O.A.,* 283 S.W.3d at 344; *J.F.C.,* 96 S.W.3d at 266. If, after conducting a legal sufficiency review of the record evidence, the court determines that no reasonable factfinder could have formed a firm belief or conviction that the matter to be proved was true, the court must conclude that the evidence on that matter is legally insufficient. *J.O.A.,* 283 S.W.3d at 344; *J.F.C.,* 96 S.W.3d at 266.

Only when the factual sufficiency of the evidence is challenged does the reviewing court review disputed or conflicting evidence. *J.O.A.,* 283 S.W.3d at 345; *J.F.C.,* 96 S.W.3d at 266. The evidence is factually insufficient in a parental rights termination case if, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction. *J.O.A.,* 283 S.W.3d at 345; *J.F.C.,* 96 S.W.3d at 266. The court of appeals should "explain in its opinion 'why it has concluded that a reasonable

factfinder could not have credited disputed evidence in favor of the finding.'" *J.O.A.,* 283 S.W.3d at 345; *see J.F.C.,* 96 S.W.3d at 266–67.

A single predicate finding under section 161.001(1) of the Family Code is sufficient to support a judgment of termination when there is also a finding that termination is in the child's best interest. *A.V.,* 113 S.W.3d at 362 (affirming termination decree based on one predicate without reaching second predicate found by factfinder and challenged by appellant); *In re U.P.,* 105 S.W.3d 222, 236 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (affirming termination decree based on single predicate under section 161.001(1)). Thus, if multiple predicate grounds are found by the trial court, we will affirm on any one ground because only one is necessary for termination of parental rights. *In re D.S.,* 333 S.W.3d 379, 388 (Tex. App.—Amarillo 2011, no pet.); *In re S.N.,* 272 S.W.3d 45, 49 (Tex. App.—Waco 2008, no pet.).

### Section 161.001(1)(E) – Child Endangerment by Conduct

Section 161.001(1)(E) of the Family Code provides that parental rights may be terminated if the parent has "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(1)(E). The relevant inquiry under this section is whether there is evidence that a parental course of conduct endangered the child's physical or emotional well-being. *Jordan v.*

9

*Dossey*, 325 S.W.3d 700, 723 (Tex. App.—Houston [1st Dist.] 2010, pet denied) (citing *In re R.D.,* 955 S.W.2d 364, 368 (Tex. App.—San Antonio 1997, pet. denied)); *see also In re J.J.S.*, 272 S.W.3d 74, 78 (Tex. App.—Waco 2008, pet. struck) (observing that termination under subsection E must be based on voluntary, deliberate, and conscious course of conduct, not single act or omission). "[E]ndangering conduct is not limited to actions directed toward the child"; "endangering conduct may include the parent's actions before the child's birth, while the parent had custody of older children[.]" *J.O.A.*, 283 S.W.3d at 345 (holding that father's history of domestic violence toward mother, admitted marijuana use, and previous incarceration on criminal charges that were later dismissed constituted legally sufficient evidence of endangerment); *see Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987) (stating that although endangerment requires more than threat of metaphysical injury or possible ill effects of less-than-ideal family environment, it is not necessary that parent's conduct be directed at child or that child actually suffers injury); *Robinson v. Tex. Dep't of Protective & Regulatory Servs.,* 89 S.W.3d 679, 686 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (stating that "to endanger" means to expose child to loss or injury or to jeopardize child's emotional or physical health); *In re M.N.G.*, 147 S.W.3d 521, 536 (Tex. App.—Fort Worth 2004, pet. denied) (holding that courts may look to parental conduct both before and after child's

10

birth to determine whether termination is appropriate, that parent's conduct need not be directed at child, and that danger to child's well-being may be inferred from parental misconduct standing alone).

"Conduct that subjects a child to [a] life of uncertainty and instability endangers the child's physical and emotional well-being." *Jordan*, 325 S.W.3d at 723 (citing *In re S.D.,* 980 S.W.2d 758, 763 (Tex. App.—San Antonio 1998, pet. denied)). Mental illness or incompetence of a parent alone are not grounds for terminating the parent-child relationship; however, if a parent's mental state causes her to engage in conduct that endangers the physical or emotional well-being of a child, that conduct can support a termination ruling under subsection E. *Id.* at 723−24 (citing *In re J.I.T.P.,* 99 S.W.3d 841, 845 (Tex. App.—Houston [14th Dist.] 2003, no pet.); *In re C.M.B.,* 204 S.W.3d 886, 895 (Tex. App.—Dallas 2006, pet. denied)). "A parent's mental instability and attempt to commit suicide may contribute to a finding that the parent engaged in a course of conduct that endangered a child's physical or emotional well-being." *Id.* at 724 (citing *In re J.T.G.,* 121 S.W.3d 117, 126 (Tex. App.—Fort Worth 2003, no pet.); *In re A.M.C.,* 2 S.W.3d 707, 716 (Tex. App.—Waco 1999, no pet.); *In re C.D.*, 664 S.W.2d 851, 853 (Tex. App.—Fort Worth 1984, no writ)).

Another factor that may contribute to an environment that endangers a child's well-being is a parent's abusive or violent criminal conduct. *Id.* (citing *In re*

11

*B.R.,* 822 S.W.2d 103, 106 (Tex. App.—Tyler 1991, writ denied)). Evidence as to how a parent has treated another child is relevant regarding whether a course of endangering conduct has been established. *See id.* (citing *In re D.T.,* 34 S.W.3d 625, 636–37 (Tex. App.—Fort Worth 2000, pet. denied)). Evidence that a parent previously has engaged in abusive conduct allows an inference that the parent's violent behavior will continue in the future. *Id.* While imprisonment should also be considered by the trial court on the issue of endangerment, mere imprisonment will not, standing alone, constitute engaging in conduct that endangers the physical or emotional well-being of a child. *See Boyd*, 727 S.W.2d at 533−34. If the evidence shows a course of conduct that has the effect of endangering the child's well-being, a finding under subsection E is supportable. *Id.* at 534.

In this case, the mother contends that the trial court's finding of endangerment under subsection E was "based solely on [her] criminal history" and that the Department failed to establish by clear and convincing evidence a voluntary course of conduct by the mother that endangered the child's physical or emotional well-being. While we agree that the evidence of the mother's criminal history alone was not a sufficient basis to terminate her parental rights, we disagree that the evidence supporting the trial court's endangerment finding is nothing more than the mother's criminal history. The Department presented other clear and convincing support for the trial court's endangerment finding.

Much of the evidence is not disputed. The mother's criminal records, admitted without objection, demonstrate that, almost one year before T.G.R.-M.'s birth, the mother was charged with the felony offense of injury to a child arising from the physical abuse of T.G.R.-M.'s older sibling, Y.C. The indictment alleged that the mother struck Y.C. with her hand, grabbed Y.C.'s hair, and dragged Y.C. across the ground. The mother pleaded guilty to the charge, and the trial court placed the mother on four years' community supervision. The mother was still on community supervision at the time of T.G.R.-M.'s birth and at the termination hearing; however, in the fifteen-month period between T.G.R.-M.'s birth and trial, the mother was arrested on two separate occasions for criminal trespass and burglary of a habitation. These arrests collectively resulted in the mother's incarceration for a period of more than four months, or approximately one quarter of T.G.R.-M.'s life.[2] Although the charges stemming from these two arrests were ultimately dismissed, each time the mother was jailed, she was absent from T.G.R.-M.'s life and was not able to provide for T.G.R.-M.'s physical and emotional needs. *See In re S.M.L.*, 171 S.W.3d 472, 479 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (observing that incarcerated parent's absence from child's daily life and inability to support child are factors contributing to course of endangering

---

[2]    There was testimony that the mother was incarcerated for about five days on the criminal trespass charge and then was incarcerated again from December 1, 2011 until sometime in April 2012 on the burglary-of-a-habitation charge.

13

conduct and that parent's repeated commission of criminal acts subjecting him to possibility of incarceration can negatively impact child's emotional well-being).

From this evidence, the trial court could infer a course a conduct by which the mother continued to place herself in situations that risked her imprisonment even though she knew her parental rights were in jeopardy on the occasion of both arrests because the Department already had custody of T.G.R.-M. *See Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) ("Conduct that routinely subjects a child to the probability that the child will be left alone because a parent is jailed endangers both the physical and emotional well-being of the child."). The same inference can be made from the evidence of the mother's continued association with T.G.R.-M.'s father, a man who acknowledged his engagement in criminal activity after T.G.R.-M.'s birth. By his testimony, T.G.R.-M.'s father confirmed that he and the mother had contact with one another after T.G.R.-M.'s birth. And, at the time she was arrested for burglary of a habitation, the mother was with T.G.R.-M.'s father. At the time of trial, he was serving jail time following his conviction on the burglary charge.

The mother's own testimony regarding her mental state was also pertinent to the trial court's endangerment finding. She testified that she suffered from depression and that she had attempted suicide while she was jailed on the injury-to-

14

a-child charge before T.G.R.-M.'s birth. According to the court liaison for the transitional home where the mother was living at the time of trial, the mother admitted to having occasionally used marijuana to cope with her depression. This admission occurred about two months before trial. Although there was other testimony regarding recent developments that show improvements in the mother's condition—i.e., testimony that she was gaining confidence through participation in drug rehabilitation, anger management, parenting, and life skills programming at the transitional home—the trial court could reasonably conclude that those improvements were outweighed by the mother's other conduct.

All but one of the mother's five children had been involved with the Department. The mother's case worker testified that the mother had not completed the recommended psychiatric and psychotherapy treatments. In addition, the caseworker testified that the mother had been homeless before T.G.R.-M.'s birth, and, more than one year after T.G.R.-M.'s removal, the mother could not offer him stable housing. Her living arrangements were only temporary. After she was released from jail following the dismissal of the burglary charge against her, the mother lived in an emergency shelter for one month and then moved to the transitional home where she resided at the time of trial. There was testimony that the mother could stay in the transitional home for ten or more months after the termination hearing and that her youngest child was currently living in the

15

transitional home with her, but there was no evidence concerning the mother's plans for maintaining a stable home after her time at the transitional home ended. The mother's employment history (or lack thereof for at least the twenty months before the termination hearing) also casts doubt concerning her ability to adequately provide for T.G.R.-M., which factors into our review of the trial court's endangerment finding. *See M.N.G.*, 147 S.W.3d at 538−39 (considering mother's ability to provide financially for children as factor under subsection E).

Although not conduct directed at T.G.R.-M., the evidence of the mother's suicide attempt, violence against T.G.R.-M.'s sibling, Y.C., imprisonment for injury to a child, loss of custody of her other children, transient lifestyle, and unemployment is clear and convincing support for the trial court's termination decision based on the ground of endangerment because the mother's conduct placed T.G.R.-M. in jeopardy by creating uncertainty and instability for T.G.R.-M. *See C.H.*, 89 S.W.3d at 28 (criticizing court of appeals for failing to account for father's pattern of conduct that was "inimical to the very idea of child-rearing," including conduct displaying criminal proclivities). We therefore reject the mother's contention that the evidence does not support a finding of endangerment. We hold instead that the evidence, viewed in accord with the applicable standards of review, is legally and factually sufficient to support the trial court's firm conviction that the mother engaged in a course of conduct that endangered the

physical and emotional well-being of T.G.R.-M. *See* TEX. FAM. CODE ANN. § 161.001(1)(E); *Boyd*, 727 S.W.2d at 531. Because the evidence sufficiently supports the trial court's finding under subsection E, we need not reach the mother's challenges to the sufficiency of the evidence under subsections L and O.

### Section 161.001(2) – Child's Best Interest

The mother also challenges the legal and factual sufficiency of the trial court's finding that T.G.R.-M.'s best interest is served by terminating the mother's rights. In determining the best interests of a child, courts examine: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individual seeking custody; (5) the programs available to assist the individual; (6) the plans for the child by the parent and the individual seeking custody; (7) the stability of the home; (8) the parent's acts or omissions that indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371−72 (Tex. 1976). The *Holley* factors are not exhaustive; some listed may not apply, while others not listed may also be appropriate. *C.H.*, 89 S.W.3d at 27.

Applying these factors, we observe first that T.G.R.-M. was under the age of two at the time of the trial and thus was too young to testify about his desire, but the evidence supports an inference that T.G.R.-M. has not bonded with the mother

because she has not taken care of T.G.R.-M. since two months after his birth. *See In re B.M.R.*, 84 S.W.3d 814, 820 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (considering whether child had conscious knowledge of parent in analysis of first *Holley* factor). We do not find, however, that this factor weighs heavily in favor of the Department because, once T.G.R.-M. was in the Department's custody, the mother was not permitted to have contact with him. The only other factor that is neutral, or even tips slightly in favor of the mother, is the fifth factor regarding the programs available to assist the mother. Although the case worker, Etinfoh, testified that the mother had not completed the recommended psychiatric and psychotherapy treatment, there was evidence that the mother was currently participating in programs addressing drug dependency, anger management, and parenting skills at her transitional home. The mother also testified that she also was receiving counseling.

The second through fourth and sixth factors weigh in favor of the Department. There was testimony that T.G.R.-M., who was placed in the same foster home as an older sibling, was happy and that his physical and emotional needs were being met. T.G.R.-M.'s foster mother stated that T.G.R.-M. occasionally suffered from stiffness and random movement of his arms and head; consequently, T.G.R.-M. had been examined by a neurologist who recommended bi-annual exams for the next three years. That medical need was being satisfied in

foster care. T.G.R.-M.'s foster mother also stated that she would like to adopt him. In contrast, the mother's conviction arising from physical abuse of another child, history of incarceration, temporary living accommodations, and lack of employment call into question whether she is capable of parenting T.G.R.-M.

These same facts also weigh in favor of a finding for the Department regarding the seventh, eighth, and ninth factors. The case worker, Etinfoh, testified that during the time T.G.R.-M. was in the Department's custody, the mother had not demonstrated an ability to provide a stable environment or a reliable source for food, clothing, shelter, and emotional support. Stability is important in a child's emotional and physical development. *Quiroz v. Dep't of Family & Protective Servs.*, No. 01-08-00548-CV, 2009 WL 961935, at *10 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (mem. op.). "Without stability, income, or a home, [a parent] is unable to provide for the child's emotional and physical needs." *In re C.A.J.*, 122 S.W.3d 888, 894 (Tex. App.—Fort Worth 2003, no pet.).

Our examination of the *Holley* factors shows clear and convincing support for the trial court's best-interest finding. We therefore conclude that legally and factually sufficient evidence supports the trial court's finding that termination of the mother's parental rights was in the best interest of T.G.R.-M.

## Conclusion

Having concluded that the evidence is legally and factually sufficient to support the trial court's findings that the mother's acts and omissions endangered the child and that the termination of the mother's parental rights is in the child's best interest, we affirm the trial court's decree that terminates the mother's parental rights to the child.

Harvey Brown
Justice

Panel consists of Chief Justice Radack and Justices Higley and Brown.