**Opinion issued December 20, 2016**



In The

# Court of Appeals

For The

# First District of Texas

————————————

### NO. 01-16-00550-CV

————————————

## IN THE INTEREST OF A.D.M. AND D.D.M., JR., Children

On Appeal from the 314th District Court
Harris County, Texas
Trial Court Case No. 2015-03517J

## MEMORANDUM OPINION

After a bench trial, the trial court terminated the parental rights of a father and a mother with respect to their two biological children. The court appointed the Texas Department of Family and Protective Services as sole managing conservator of the children. The father and mother each separately appealed the termination decree. Both parents challenge the sufficiency of the evidence to support the statutory

grounds for termination. In particular, the father challenges the trial court's findings of endangerment and failure to comply with a court order, *see* TEX. FAM. CODE § 161.001(b)(1)(D), (E), (O), and the mother challenges the trial court's finding of endangerment, *see id.* § 161.001(b)(1)(E). Both parents challenge the sufficiency of the evidence to support the trial court's finding that termination was in the best interest of the children. *See id.* § 161.001(b)(2).

Because we find the evidence legally and factually sufficient to support the termination decree, we affirm.

**Background**

This appeal is brought by D.D.M., the biological father, and C.V.M., the biological mother, of two children. The appellants had a daughter, A.D.M., and a younger son, D.D.M., Jr. Five months after the boy's birth, the mother, then 26 years old, was voluntarily admitted to West Oaks Hospital for postpartum depression. She was upset because she had been having thoughts of harming her two-year-old daughter, A.D.M., and then killing herself. Two days later, on May 8, 2015, a referral for neglectful supervision was made to Child Protective Services. It indicated that due to mental-health issues, the mother could not provide adequate supervision to her two children. The referral indicated that the father worked most of the time, leaving the mother home alone with the children. It also indicated that the mother had another older child who previously had been removed from her custody.

2

While the mother was in the hospital, the Department prepared a safety plan which required the father to submit to drug and psychological tests and required the mother only to have supervised contact with the children upon her release on May 14, 2015. Although both parents signed the safety plan, they did not abide by its conditions. The father did not submit to testing, and the Department received information that the mother had been left alone with the children. On June 3, 2015, the Department removed the children, alleging that the father allowed them unsupervised contact with the mother. When the children entered custody, the daughter had a black eye, but otherwise neither child had any special needs. They were placed in foster care and eventually moved to a foster home with their older sister, E.F.

The court entered orders establishing the actions necessary for the parents to obtain the return of their children. In June 2015, the court ordered the parents "to comply with each requirement set out in the Department's original, or any amended, service plan," and it indicated that failure to do so could "result in the restriction or termination of parental rights." On August 13, 2015, the court entered additional temporary orders, which required each parent to do the following: (1) complete a substance abuse treatment program if recommended; (2) complete a psychological examination and follow all recommendations; (3) participate in counseling which may include individual, group, or family therapy sessions; (4) complete parenting

3

classes; (5) complete a drug and alcohol assessment and follow all recommendations of the drug and alcohol assessment if recommended; (6) complete random drug tests, which may include a hair follicle test; (7) remain drug free; (8) refrain from engaging in criminal activity; (9) maintain stable housing; (10) maintain stable employment; and (11) complete all services outlined in the family plan of service.

The Department later sought termination of both parents' parental rights on the grounds that the father failed to comply with a court order and endangered the children, *see* TEX. FAM. CODE § 161.001(b)(1)(D), (E), (O), and that the mother endangered the children as well. *See id.* § 161.001(b)(1)(E).

At trial, the father denied allowing the mother unsupervised access to the children upon her release from West Oaks Hospital. He acknowledged, however, that when the children were removed, the electricity in his apartment had been terminated, the eviction process had begun, and there was a roach infestation. He also acknowledged his prior criminal history, which included burglary, and his continuing history of drug use. The father admitted using synthetic marijuana prior to the Department's involvement in this case. Test results admitted at trial were positive for cocaine and marijuana in June and August 2015, and for synthetic marijuana use in June, August, and November 2015.

The father did not complete all of the services required by the family plan of service. He did not complete parenting classes or attend all scheduled visits with his

4

children. There was conflicting evidence about whether he completed a psychological assessment and a psychosocial-and-drug assessment. The father did not provide the Department with proof of income or a lease, although he testified that he had a job and was living in a hotel. He testified that he was working for "Michael International," but later he testified that this was not true, and he said he was actually self-employed, earning $800–$900 per week shining shoes. He testified that he brought books and toys to his children at visits but that he never brought formula or diapers, nor did he pay child support, because he was not required to do so.

Before the Department became involved with the children, the father was aware that the mother was abusive toward their daughter because he had seen bruises and injuries on her. For example, the father testified that the mother had held the girl "in a choke hold up against the wall," and she had thrown and hit her several times, including hitting the child's face. But the father never saw evidence that their infant son was abused, and he continued to leave the mother alone with the children.

The mother testified at trial. She admitted that she used synthetic marijuana prior to the Department's involvement in this case. She also admitted that she had relinquished custody of an older daughter after having been charged with abandonment or endangerment of a child. In that case, she had left her first child, E.F., who then was one year old, alone in her crib for several hours while she went

to work. She received deferred adjudication for this offense, which she successfully completed. She admitted smoking synthetic marijuana in violation of her probation, although she did not get caught.

The mother completed all of the services on the family plan of service, and she remained drug-free during the pendency of the case, but the Department remained concerned about her failure to address her mental-health problems. She had been diagnosed with postpartum depression, borderline personality disorder, and bipolar disorder. The mother also had suicidal thoughts before and after the children were removed by the Department. She had thoughts of physically harming her daughter as well as her husband, whom she believed to be having an affair with a neighbor. Although the mother was under a psychiatrist's care throughout the pendency of the case, she did not take her prescribed medication consistently. For at least seven months, the mother was not medicated, and she continually denied needing medication. The Department's caseworker was concerned that the mother could stop taking her medication in the future, endangering the physical well-being of the children if they were returned to her. Yet the mother testified that she "would be fine" "even without the medication" because she was divorcing the father.

At trial, the mother admitted hitting her daughter A.D.M. only one time, and she denied having put her in a chokehold, saying it was only a dream. Notes in the psychosocial report indicate that the mother admitted such abuse to the psychologist.

The report quoted the mother as saying that she was "having suicidal and homicidal thoughts about her daughter," "having blackouts" and waking up to find her daughter "had bruises all over her body." The mother reported that she would "snap back from the blackouts and attempt to doctor her up." She also recalled once "slamming" her daughter's face on the ground. In addition, the caseworker described one supervised visit when the mother dealt roughly with her daughter after the child had thrown a toy and cried, putting her in "time out" and pushing her against a wall.

The trial court granted the Department's petition to terminate the parents' rights, and both parents appealed.

### Analysis

The parents challenge the legal and factual sufficiency of the evidence to support the trial court's findings of predicate acts in support of termination and that termination was in the best interest of their children.

Protection of the best interests of the child is the primary focus of the termination proceeding in the trial court and our appellate review. *See In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003). A parent's right to the care, custody, and control of his children is a precious liberty interest protected by the Constitution. *See, e.g.*, *Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 2060 (2000); *Santosky v. Kramer*, 455 U.S. 745, 758–59, 102 S. Ct. 1388, 1397 (1982). Accordingly, termination proceedings are strictly scrutinized on appeal. *See Holick v. Smith*, 685

S.W.2d 18, 20 (Tex. 1985). Clear and convincing evidence must support the decision to terminate parental rights. *In re J.F.C.*, 96 S.W.3d 256, 263–64 (Tex. 2002); *see also Santosky*, 455 U.S. at 747–48, 102 S. Ct. at 1391–92. Evidence is legally sufficient if it is "such that a factfinder could reasonably form a firm belief or conviction about the truth of the matter on which the State bears the burden of proof." *J.F.C.*, 96 S.W.3d at 266; *see* TEX. FAM. CODE § 101.007. We review "the evidence in the light most favorable to the judgment," meaning that we "must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *J.F.C.*, 96 S.W.3d at 266. "If, after conducting its legal sufficiency review of the record evidence, a court determines that no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then that court must conclude that the evidence is legally insufficient." *Id.*

In a factual sufficiency review, we consider the entire record, including evidence both supporting and contradicting the finding. *See id.*; *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *J.F.C.*, 96 S.W.3d at 266.

In proceedings to terminate the parent-child relationship, the Department must establish by clear-and-convincing evidence that one or more of the acts or omissions listed in Family Code section 161.001(b)(1) occurred and that termination is in the best interest of the child. TEX. FAM. CODE § 161.001(b). Both elements must be established, and termination may not be based solely on the best interest of the child as determined by the trier of fact. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987).

## I. The father's appeal

The father raises four sufficiency issues in his appeal. He contends that the evidence is legally and factually insufficient to support the trial court's findings that he committed the predicate acts of endangerment and failing to comply with a court order and that termination of his parental rights was in his children's best interest.

## A. Predicate finding

The Department sought termination of the father's parental rights on grounds of endangerment, *see* TEX. FAM. CODE § 161.001(b)(1)(D), (E), and failure to comply with a court order, *see id.* § 161.001(b)(1)(O). "Only one predicate finding" under section 161.001(b)(1) "is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest." *A.V.*, 113 S.W.3d at 362.

The father argues that the evidence was legally and factually insufficient to support termination for failure to comply with a court order because he substantially complied with the family plan of service. Subsection O requires clear-and-convincing evidence that the parent:

> failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child.

TEX. FAM. CODE § 161.001(b)(1)(O); *see In re S.M.R.*, 434 S.W.3d 576, 582 (Tex. 2014).

On appeal, the father does not dispute that: (1) the family plan of service was a court order that specifically established the actions necessary for him to obtain return of his children; (2) the children had been in the Department's conservatorship for at least nine months; and (3) they were removed due to abuse or neglect. The final decree of termination includes these unchallenged fact findings, and we "defer to unchallenged findings of fact that are supported by some evidence." *Tenaska Energy, Inc. v. Ponderosa Pine Energy, LLC*, 437 S.W.3d 518, 523 (Tex. 2014); *see McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986).

The unchallenged findings of fact are supported by some evidence. The trial court approved and incorporated the requirements of the family service plan as a court order, and it was admitted as an exhibit at trial. Trial was held more than twelve

months after the Department first assumed managing conservatorship of the children. In its "Order for Protection of a Child in an Emergency and Notice of Hearing," the trial court found that the children had been removed pursuant to section 262.104 of the Family Code and that there was "a continuing danger to the physical health or safety of the children if returned to the parent."

The father acknowledges that he did not complete all of the requirements of the family plan of service, however, he argues that he substantially complied with the plan by working "very hard to stabilize a job and housing." He argues that the Department's evidence was insufficient to support termination on this predicate ground in light of his substantial compliance. The evidence before the trial court was conflicting in that regard, and substantial compliance with a court-ordered family service plan may be insufficient to avoid termination. *See, e.g.*, *In re A.W.*, No. 01-15-01030-CV, 2016 WL 3022824, at *7 (Tex. App.—Houston [1st Dist.] May 26, 2016, no pet.) (mem. op.) (citing *In re T.T.*, 228 S.W.3d 312, 319–20 (Tex. App.—Houston [14th Dist.] 2007, pet. denied)).

The father admitted his failure to complete the required actions on the family plan of service, and the evidence supported conclusions that he failed to: complete parenting classes, a psychological assessment, and a psychosocial-and-drug assessment; attend all scheduled visits with his children; and provide the Department with proof of income or a lease. We accordingly find the evidence legally and

11

factually sufficient to support the trial court's finding that the father failed to comply with a court order that established the actions necessary for him to obtain the return of his children. *See* TEX. FAM. CODE § 161.001(b)(1)(O).

## B.    Best interest of the children

A strong presumption exists that a child's best interests are served by maintaining the parent-child relationship. *See, e.g.*, *In re G.M.*, 596 S.W.2d 846, 846–47 (Tex. 1980); *In re L.M.*, 104 S.W.3d 642, 647 (Tex. App.–Houston [1st Dist.] 2003, no pet.). In determining whether termination of a father's parental rights was in the children's best interest, we consider several nonexclusive factors, including (1) the children's desires, (2) the current and future physical and emotional needs of the children, (3) the current and future physical danger to the children, (4) the parental abilities of the person seeking custody, (5) whether programs are available to assist the person seeking custody in promoting the best interests of the children, (6) plans for the children by the person seeking custody, (7) stability of the home, (8) acts or omissions of the parent that may indicate that the parent-child relationship is improper, and (9) any excuse for acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). The Department is not required to prove all of these factors, and the absence of evidence about some factors does not preclude the factfinder from reasonably forming a strong conviction that termination is in the children's best interest. *See C.H.*, 89 S.W.3d at 27. Evidence

establishing one of the predicate acts under section 161.001(b)(1) also may be relevant to determining the best interests of the children. *See id.* at 27–28.

Several of the *Holley* factors are neutral in our analysis of this appeal. Neither of the children testified, and they are both too young to express their desired outcome. The evidence showed that they are placed in a foster home with their biological sister, E.F., and they are well-bonded to their foster parents, who wish to adopt them. The record is silent as to availability of programs to assist the father in promoting the best interests of the children or any excuse for his acts or omissions.

The father's plan for the children was for them to live with him in a hotel room until he was able to secure more stable housing. Stability of the home has been found "to be of paramount importance in a child's emotional and physical well-being." *Quiroz v. Dep't of Family & Protective Servs.*, No. 01-08-00548-CV, 2009 WL 961935, at *10 (Tex. App.—Houston [1st Dist.] April 9, 2009, no pet.) (mem. op.). "Without stability," a parent cannot "provide for the child's emotional and physical needs." *In re C.A.J.*, 122 S.W.3d 888, 894 (Tex. App.—Fort Worth 2003, no pet.). The father did not provide the Department with a copy of a lease or evidence of regular income. Thus, the evidence relating to plans for the children and stability of the home supports the court's finding that termination of the father's parental rights was in the children's best interest.

A parent's drug use also may indicate instability in the home because it exposes the children to the possibility that the parent may be impaired or imprisoned. *See In re A.M.*, 495 S.W.3d 573, 579 (Tex. App.—Houston [1st Dist.] 2016, pet. denied); *P.W. v. Dep't of Family & Protective Servs.*, 403 S.W.3d 471, 479 (Tex. App.—Houston [1st Dist.] 2013, pet. dism'd w.o.j.). The father used synthetic marijuana prior to Department's involvement in this case. According to testimony and test results admitted at trial, he continued to use illegal drugs while this case was pending. He tested positive for cocaine, marijuana, and synthetic marijuana. The father's continued use of illegal drugs not only exposed him to the possibility of imprisonment but also jeopardized his continued relationship with his two young children.

In this case, the children were young, having been removed from their parents at the approximate ages of two years and six months. Although the children had no known special needs by the time of trial, their young age made them vulnerable. There was a history of the father failing to protect the daughter from the abusive conduct by the mother, even when he was aware that the mother was not able to care for the children safely. The father demonstrated an unwillingness to effect positive changes within a reasonable period of time by failing to follow through on his family plan of service, although he testified that he failed to complete these tasks because he was working "very hard to stabilize a job and housing." Finally, there was no

evidence that the father demonstrated adequate parenting skills, and some evidence, primarily testimony from the mother, that he did not know how to take care of the children.

We conclude that the evidence is both legally and factually sufficient to support the trial court's finding that termination of the father's parental rights was in the best interest of the children. We overrule the father's third and fourth issues. Having found legally and factually sufficient evidence to support one predicate act and a finding that termination was in the best interest of the children, we need not consider the father's issues that pertain to the sufficiency of the evidence to support the other predicate acts found by the trial court. *See A.V.*, 113 S.W.3d at 362; *see also* TEX. R. APP. P. 47.1.

## II. The mother's appeal

The mother raises two issues on appeal. She contends that the evidence is legally and factually insufficient to support the trial court's finding that she committed the predicate act of endangerment and that termination of her parental rights was in her children's best interests.

## A. Predicate finding

The Department sought termination of the mother's parental rights on grounds of endangerment. *See* TEX. FAM. CODE § 161.001(b)(1)(E). The predicate act of endangerment as alleged in this case is satisfied if the parent has "engaged in conduct

or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." *Id*. In this context, "endanger" means to expose to loss or injury or to jeopardize. *Boyd*, 727 S.W.2d at 533. The term means "more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment." *Id.* The parent's conduct need not occur in the child's presence, and it may occur "both before and after the child has been removed by the Department." *Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). Termination under section 161.001(b)(1)(E) must be based on more than a single act or omission: a voluntary, deliberate, and conscious course of conduct by the parent is required. *In re D.T.*, 34 S.W.3d 625, 634 (Tex. App.—Fort Worth 2000, pet. denied). The parent's conduct need not be directed at the child and the child need not actually suffer injury: the danger to the child's well-being may be inferred solely from the parent's misconduct. *Boyd*, 727 S.W.2d at 533.

"Conduct that subjects a child to life of uncertainty and instability endangers the child's physical and emotional well-being." *Jordan v. Dossey*, 325 S.W.3d 700, 724 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). Although a parent's mental illness alone is "not grounds for terminating the parent-child relationship," *In re T.G.R.-M.*, 404 S.W.3d 7, 14 (Tex. App.—Houston [1st Dist.] 2013, no pet.), "[u]ntreated mental illness can expose a child to endangerment . . . and is a factor

the court may consider." *In re S.R.*, 452 S.W.3d 351, 363 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). For example, a court may consider as evidence of endangerment a parent's failure to take medication prescribed to ameliorate mental health issues. *See In re O.D.H.*, No. 14-15-00489-CV, 2015 WL 6949771, *5–*6 (Tex. App.—Houston [14th Dist.] Nov. 10, 2015, no pet.) (mem. op.); *In re L.L.F.*, No. 02–11–00485–CV, 2012 WL 2923291, at *15 (Tex. App.—Fort Worth July 19, 2012, no pet.) (mem. op.); *In re J.I.T.P.*, 99 S.W.3d 841, 845 (Tex. App.—Houston [14th Dist.] 2003, no pet.).

A parent's mental state also "may be considered in determining whether a child is endangered if that mental state allows the parent to engage in conduct that jeopardizes the physical or emotional well-being of the child." *Jordan*, 325 S.W.3d at 723 (citing *J.I.T.P.*, 99 S.W.3d at 845). Mental illness can support a finding of endangerment when the parent experiences suicidal thoughts, plans, or attempts. *See In re J.T.G.*, 121 S.W.3d 117, 126 (Tex. App.—Fort Worth 2003, no pet.); *In re A.M.C.*, 2 S.W.3d 707, 716 (Tex. App.—Waco 1999, no pet.); *In re C.D.*, 664 S.W.2d 851, 853 (Tex. App.—Fort Worth 1984, no writ). Abusive, violent, or criminal conduct by a parent also can produce an environment that endangers the well-being of a child. *T.G.R.-M.*, 404 S.W.3d at 14. "Evidence that a parent previously has engaged in abusive conduct allows an inference that the parent's

17

violent behavior will continue in the future," even when such conduct was directed at a sibling. *Id.*

The mother argues that the evidence of endangerment is insufficient in regard to evidence of her prior acts of abuse or violence as well as evidence that she refused to comply with a medication regimen. The mother testified that the psychosocial report quoting her to the effect that she would "slam and hurt" her daughter while having a "blackout" and find her daughter with "bruises all over her body" were not factual statements, but a recounting of a dream. She also argued that the father's testimony was unreliable to the extent that he said he knew that she had abused the daughter because he had seen bruises and injuries on her, and that she had thrown, hit, and held the daughter in a chokehold. The mother contended that the father was biased because they were going through a contentious divorce, his character for truthfulness was impeached by evidence of his prior criminal and bad acts, and by other inconsistencies in his testimony. However, the trier of fact is the sole judge of the credibility of the witnesses and the weight to give their testimony. *See City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005); *In re K.P.*, 498 S.W.3d 157, 171 (Tex. App.—Houston [1st Dist.] May 26, 2016, pet. denied). As such, it was up to the court to resolve credibility issues and inconsistencies in the evidence.

The mother had been diagnosed with postpartum depression, borderline personality disorder, and bipolar disorder, and she had thoughts of physically

harming her daughter and her husband and of killing herself. These conditions caused her, commendably, to seek inpatient mental-health care. In addition, although the mother continued to see a psychiatrist throughout the case, she did not take the medication required to manage her conditions. She continually denied needing them, and she refused to take them for seven months during the pendency of this case. She offered various explanations for her failure to follow her medication regimen, but the trial court as factfinder was free to reject her explanations. Finally, although the mother was taking medication at the time of trial, she testified that she believed she would be fine without medication, that she intended to "stop taking it," and that she believed she would be "fine" without medication.

The mother admitted that she had hit her daughter once before the children were removed, but she argues on appeal that this isolated incident was insufficient to support an endangerment finding. The trial court as factfinder was entitled to believe the father's testimony that the mother hit and slammed the child more than once—evidence that would support a continuing course of conduct and an endangerment finding. In addition, it is undisputed that the mother was not taking prescription medication at the time she alleged abused or acted violently toward her daughter. The mother also admitted to self-medicating with synthetic marijuana during that time period.

Considering the evidence presented at trial, the trial court could have concluded that the mother's abusive and violent conduct, her refusal to treat her mental illness with medication for long stretches of time, her history of suicidal thoughts and plans as well as thoughts and plans of harming others including her daughter, and her continued insistence that she does not need medication amount to a voluntary course of conduct by which she has jeopardized the physical and emotional well-being of her children. As such, the evidence is both legally and factually sufficient to support the trial court's findings under section 161.001(b)(1)(E). We overrule the mother's first issue.

## C.     Best interest of the children

As with the father, several of the *Holley* factors are neutral in our analysis of this appeal. Neither of the children testified, and they are both too young to express their desired outcome. The evidence showed that they are placed in a foster home with their biological sister, E.F., and well-bonded to their foster parents, who wish to adopt them. The record is silent as to availability of programs to assist the mother in promoting the best interests of the children or any excuse for the mother's acts or omissions.

The mother's plan for the children was for them to live with her in an apartment. She worked at a donut shop from 5:45 a.m. until 11:00 a.m., and she planned for them to attend day care during those hours. She denied having anyone

who could help or support her with the children but she testified, "I have friends that I can call to vent to, to talk to my kids, to entertain them through the phone." She testified that she would be fine without medication. This factor is essentially neutral in our analysis. Although the mother has a place to stay and a job, the record is not well developed as to adequacy of her living arrangements, how much the mother earns from her job, and whether the income is sufficient to care her children's needs now and in the future.

The *Holley* factor dealing with acts or omissions of the parent weighs in favor of termination of the mother's parental rights. First, she endangered her older child, E.F., by leaving her home alone at the age of one while she went to work. She subsequently lost or relinquished custody of that child and received deferred-adjudication community supervision in connection with the related criminal case.

In addition, although the mother denies it, there was sufficient evidence to show that she physically abused daughter A.D.M. while experiencing postpartum depression and other mental-health issues. This evidence included statements made to psychologists, testimony from the father, and evidence that the child had a black eye when the Department removed the children from the home. Although the mother completed the services on her family plan of service, she began her involvement with the Department in this case by violating the safety plan which prohibited unsupervised contact with her children upon her initial release from West Oaks

Hospital. She also failed to follow her prescription medication regimen, which put her in jeopardy of needing repeated inpatient hospital stays which would remove her from the family home and have a destabilizing effect on the children. *See Quiroz*, 2009 WL 961935, at *10 (importance of stability).

The children in this case were young, both under the age of four at the time of trial, and although they had no special needs, their ages made them inherently vulnerable. There was a history of the mother behaving in an abusive and assaultive manner toward the daughter and of having thoughts of harming her. The mother showed a willingness and ability to seek and accept beneficial counseling and agency services, except with respect to the circumstance that brought the children into the Department's care in the first place: her mental health. The mother's parenting skills improved, but the caseworker noted that they seemed inconsistent. Although there was only one specific incident of concern during supervised visitations, when the mother was impatient and rough with the daughter and pushed her into a wall, this incident occurred shortly before trial, when she should have learned and grown the most.

Our examination of the *Holley* factors shows clear-and-convincing support for the trial court's best-interest finding. We conclude that legally and factually sufficient evidence supports the trial court's finding that termination of the mother's

parental rights was in the best interest of her children. We overrule the mother's second issue.

## Conclusion

We affirm the decree of the trial court.


Michael Massengale
Justice

Panel consists of Justices Massengale, Brown, and Huddle.