# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-18-00115-CV
NO. 03-18-00116-CV


**L. D.-C., Appellant**

v.

**Texas Department of Family and Protective Services, Appellee**


**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT
NOS. D-1-FM-16-003517 & D-1-FM-17-001124
HONORABLE AMY CLARK MEACHUM, JUDGE PRESIDING**


# M E M O R A N D U M   O P I N I O N


L.D.-C. (Mother) appeals from the trial court's orders terminating her parent-child relationship with her children, M.D., M.M.D., and M.D.D.[1] In three issues, Mother contends that the evidence is legally and factually insufficient to support the termination of her parental rights. We will affirm the trial court's orders terminating Mother's parental rights.

---

[1] To protect the privacy of those involved, we refer to Mother and her children by their initials. *See* Tex. Fam. Code § 109.002(d). We note that M.D. and M.M.D. are twins.

## BACKGROUND[2]

In June 2016, a police officer pulled Mother over for a traffic violation, arrested her, and discovered that one of her twin children was not in a car seat. Mother was charged with endangering a child and evading arrest, and the Texas Department of Family and Protective Services (the Department) removed the twin children from her care. After Mother spent 60 days in jail, both charges were dismissed and Mother was released. Mother gave birth to another child, M.D.D., in February 2017. The Department immediately removed M.D.D. from Mother's care because of the pending case involving the other children and because the Department became aware of posts on Mother's Facebook account that suggested that Mother was involved in selling illegal drugs.

The Department sought termination of the parent-child relationship between Mother and her three children, and the trial court held a final hearing in December 2017. After the hearing, the trial court found by clear and convincing evidence that Mother "engaged in conduct, or knowingly placed the subject Children . . . with persons who engaged in conduct which endangers the physical or emotional well-being" of the children, *see* Tex. Fam. Code § 161.001(b)(1)(E), that Mother "constructively abandoned the subject Children," *see id.* § 161.001(b)(1)(N), and that "it is in the best interest of the Children" to terminate Mother's parental rights, *see id.* § 161.001(b)(2).

---

[2] The facts recited in this opinion are taken from testimony and exhibits presented at the final termination hearing. Although we have considered the entire record, because this is a memorandum opinion affirming the trial court's termination orders, we do not exhaustively detail the evidence. *See* Tex. R. App. P. 47.4 ("If the issues are settled, the court should write a brief memorandum opinion no longer than necessary to advise the parties of the court's decision and the basic reasons for it."); *In re A.B.*, 437 S.W.3d 498, 507 (Tex. 2014) (holding courts of appeals need not detail the evidence when affirming termination findings).

Accordingly, the trial court signed orders terminating Mother's parental rights to her three children.[3] This appeal followed.

## STANDARD OF REVIEW

To terminate the parent-child relationship, a court must find by clear and convincing evidence that: (1) the parent has committed one of the enumerated statutory grounds for termination and (2) it is in the child's best interest to terminate the parent's rights. *Id.* § 161.001(b). Mother contends that the evidence is legally and factually insufficient to support the termination of her parental rights under subsection (E) or (N).[4] *See id.* § 161.001(b)(1)(E), (N). "The distinction between legal and factual sufficiency when the burden of proof is clear and convincing evidence may be a fine one in some cases, but there is a distinction in how the evidence is reviewed." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). When reviewing the legal sufficiency of the evidence in a parental-rights-termination case, we consider all the evidence in the light most favorable to the trial court's finding and determine whether a reasonable fact-finder could have formed a firm belief or conviction that its finding was true. *See id.*; *see also In re K.M.L.*, 443 S.W.3d 101, 112 (Tex. 2014). When reviewing the factual sufficiency of the evidence, we view all of the evidence in a neutral light and determine whether a reasonable fact-finder could form a firm belief or conviction that a given finding was true. *In re C.H.*, 89 S.W.3d 17, 18–19 (Tex. 2002). We assume that the fact-finder resolved disputed facts in favor of its finding if a reasonable person could do so, and we

---

[3] The trial court also terminated the parent-child relationship between the children and their father. The father is not a party to this appeal.

[4] On appeal, Mother does not challenge the trial court's finding that termination of her parental rights was in the children's best interest. *See* Tex. Fam. Code § 161.001(b)(2).

disregard evidence that a reasonable fact-finder could have disbelieved or found incredible. *In re J.F.C.*, 96 S.W.3d at 266. Evidence is factually insufficient only if a reasonable fact-finder could not have resolved the disputed evidence in favor of its finding and if that disputed evidence is so significant that the fact-finder could not reasonably have formed a firm belief or conviction that its finding was true. *Id.*

## DISCUSSION

In her first issue, Mother contends that the evidence was legally and factually insufficient to support the trial court's finding by clear and convincing evidence that Mother "engaged in conduct, or knowingly placed the subject Children . . . with persons who engaged in conduct which endangers the physical or emotional well-being" of the children. *See* Tex. Fam. Code § 161.001(b)(1)(E). Only one ground under section 161.001(b)(1) is necessary to support a judgment in a parental-rights-termination case. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *Spurck v. Texas Dep't of Family & Protective Servs.*, 396 S.W.3d 205, 221 (Tex. App.—Austin 2013, no pet.). Therefore, we will limit our discussion to subsection (E).

Subsection (E) requires proof of child endangerment, i.e., exposing a child to loss or injury or jeopardizing a child's emotional or physical well-being. *Texas Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). Endangerment does not need to be established as an independent proposition but may be inferred from parental misconduct alone. *Id.* To constitute endangerment under subsection (E), the parent's conduct need not be directed at the child. *In re E.N.C.*, 384 S.W.3d 796, 803 (Tex. 2012). Conduct may endanger a child even if it does not cause

4

the child to suffer actual injury. *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996) (per curiam) (quoting *Boyd*, 727 S.W.2d at 533).

A parent's illegal drug use may constitute endangerment under subsection (E). *See In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009) ("[A] parent's use of narcotics and its effect on his or her ability to parent may qualify as an endangering course of conduct."); *In re M.C.*, 482 S.W.3d 675, 685 (Tex. App.—Texarkana 2016, pet. denied) ("Because it exposes the child to the possibility that the parent may be impaired or imprisoned, illegal drug use may support termination under [subsection (E)].") (internal quotation marks omitted); *T.M. v. Texas Dep't of Family & Protective Servs.*, No. 03-14-00784-CV, 2015 WL 3393943, at *2 (Tex. App.—Austin May 21, 2015, no pet.) (mem. op.) ("It is well-established that a parent's illegal drug use may constitute endangerment."). Moreover, "[e]vidence of criminal conduct, convictions, and imprisonment and its effect on a parent's life and ability to parent may establish an endangering course of conduct." *In re B.C.S.*, 479 S.W.3d 918, 926 (Tex. App.—El Paso 2015, no pet.); *see D.M. v. Texas Dep't of Family & Protective Servs.*, No. 03-17-00137-CV, 2017 WL 2628949, at *2 (Tex. App.—Austin June 13, 2017, no pet.) (mem. op.) ("[A]lthough a parent's incarceration, standing alone, will not support a finding of endangerment, the trial court may consider it as a factor in determining whether the parent has engaged in a course of conduct that endangers the child.").

Further, "[c]onduct that subjects a child to life of uncertainty and instability endangers the child's physical and emotional well-being." *Jordan v. Dossey*, 325 S.W.3d 700, 723 (Tex. App.—Houston [1st Dist.] 2010, pet. denied); *see In re S.M.*, 389 S.W.3d 483, 492 (Tex. App.—El Paso 2012, no pet.) ("The endangerment to the child's well-being may be inferred from parental

misconduct, including conduct that subjects the child to a life of uncertainty and instability."). Missing visits can be conduct that subjects the children to instability and uncertainty and therefore endangers them. *See In re A.R.M.*, No. 05-17-00539-CV, 2018 WL 1559820, at *10 (Tex. App.—Dallas Mar. 30, 2018, no pet. h.) (mem. op.) ("[M]any factors can support an endangerment finding, including not only violence and drug use but also a parent's failure to complete a court-ordered service plan, missed visits with the child, and conduct that generally subjects a child to a life of instability and uncertainty."); *In re D.A.*, No. 02-15-00213-CV, 2015 WL 10097200, at *5 (Tex. App.—Fort Worth Dec. 10, 2015, no pet.) (mem. op.) ("[T]he risk of emotional harm from a parent's missed visits with a child may support a finding of endangerment."); *In re R.M.*, No. 07-12-00412-CV, 2012 WL 6163100, at *4 (Tex. App.—Amarillo Dec. 11, 2012, no pet.) (mem. op.) ("Evidence of Christy's inconsistent participation in visitation with the children also support[s] the trial court's finding that she engaged in conduct which endangered the children's physical or emotional well-being.").

When determining whether a parent has engaged in an endangering course of conduct, a court may consider the parent's actions and inactions that occurred both before and after the child was born. *See In re M.C.*, 482 S.W.3d at 685 ("The conduct to be examined includes what the parent did both before and after the child was born.") (internal quotation marks omitted); *In re B.C.S.*, 479 S.W.3d at 926 (same); *In re S.M.*, 389 S.W.3d at 491–92 ("[I]n considering whether a relevant course of conduct has been established, a court properly may consider both actions and inactions occurring both before and after a child's birth."); *id.* at 492 ("Evidence as to how a parent has treated another child or spouse is relevant regarding whether a course of conduct under Section 161.001(1)(E) has been established."). In addition, the fact-finder may infer that a parent's

6

future behavior will be similar to her past behavior. *See In re T.G.R.-M.*, 404 S.W.3d 7, 14 (Tex.

App.—Houston [1st Dist.] 2013, no pet.); *In re S.M.*, 389 S.W.3d at 492.

Here, the Department presented evidence that:

- Mother left her twin children unattended in a vehicle in a store parking lot.

- Mother sped away from a pursuing police officer while one of her children was not in a car seat. Mother spent 60 days in jail because of this incident, although the charges were eventually dismissed.

- Mother did not have a driver's license when she was pulled over and did not have a driver's license at the time of the termination hearing.

- Mother created two Facebook posts suggesting that she wanted to sell illegal drugs.

- When Mother's twin children arrived in a foster home, they were "very thin," in "the third percentile," had many bug bites, were angry and confused, were not able to speak, and had nails that had not been cut.

- Mother's visitation with her children was "not . . . consistent at all." Mother would confirm visits and not show up. Such inconsistency "could go on for months at a time," and Mother missed more visits than she made.

- Mother had at least five different telephone numbers during the case, making it difficult for the Department to contact her.

- Mother lived in nine different places during the case, including three different shelters.

- Mother had three different jobs during the case. She quit one of the jobs because some of her coworkers would "come to work with drama and stuff."

- The children's foster mother observed Mother push one of the children during a visit and "was kind of appalled."

- Mother was arrested for possession of marihuana two months before the termination hearing.

7

We acknowledge that Mother presented testimony contradicting some of the evidence summarized above. For example, Mother testified that she did not leave her children unattended in a vehicle, that she did not create the incriminating Facebook posts, and that she did not commit the offense of possession of marihuana for which she was arrested. However, the trial court, as fact-finder, was the sole judge of the credibility of the evidence. *See In re J.O.A.*, 283 S.W.3d at 346. We also acknowledge that Mother presented testimony that she had completed some of the courses required by her service plan, that she had stable housing with her grandfather at the time of the hearing, that she had a stable job that she enjoyed, and that she thought about her children all the time. Nevertheless, considering all the evidence in the light most favorable to the trial court's finding, we determine that the trial court could have reasonably formed a firm belief or conviction that Mother endangered the children by posing physical risks to them and by generating instability and uncertainty in their lives. We therefore conclude that legally sufficient evidence supports the trial court's finding under subsection (E). In addition, viewing all of the evidence in a neutral light, we determine that the trial court have reasonably formed a firm belief or conviction that Mother endangered the children. Therefore, we conclude that factually sufficient evidence supports the trial court's finding under subsection (E).

Because we have concluded that legally and factually sufficient evidence supports the trial court's finding that termination of Mother's parental rights under subsection (E) was appropriate, we overrule Mother's first issue. Moreover, because only one ground under section 161.001(b)(1) is necessary to support a judgment in a parental-rights-termination case, *see Spurck*, 396 S.W.3d at\ 221, we overrule Mother's remaining appellate issues.

8

## CONCLUSION

We affirm the trial court's orders terminating L.D.-C.'s parent-child relationship with M.D., M.M.D., and M.D.D.

_____

Scott K. Field, Justice

Before Chief Justice Rose, Justices Goodwin and Field

Affirmed

Filed:  June 14, 2018