

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

___

No. 07-18-00126-CV

___

IN THE INTEREST OF M. F., A CHILD

___

On Appeal from the County Court at Law No. 1
Randall County, Texas
Trial Court No. 71776-L1, Honorable Jack M. Graham, Presiding

___

August 23, 2018

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Appellant B.C., the mother of M.F., appeals from the trial court's order terminating her parental rights to her child.[1]  She challenges the order through two issues.  We will affirm.

Background

B.C. and M.F.'s father were not married, but dated and used drugs together for about a month before B.C. became pregnant.  B.C. stopped using drugs when she

___

[1] To protect the child's privacy, we will refer to the mother and the child by their initials and to the father as "the father."  TEX. FAM. CODE ANN. § 109.002(d) (West 2017); TEX. R. APP. P. 9.8(b).

learned she was pregnant, and remained sober for four months. She relapsed later during pregnancy and had two positive drug screens while pregnant, one in January 2017 and one in March 2017. M.F. was born the first week of April 2017. Both B.C. and M.F. tested negative at the time of M.F.'s birth but shortly thereafter the mother tested positive for methamphetamine and marijuana. Three days after M.F.'s birth, the Texas Department of Family and Protective Services filed pleadings that included a petition for protection of a child, for conservatorship and for termination in suit affecting the parent-child relationship. The trial court entered an order removing M.F. from B.C.'s care the same day. From the hospital, the infant was placed with her paternal grandparents.

The trial court held the final hearing in early April 2018. At that time, B.C. was almost thirty-eight years old and M.F. had just turned one year of age. M.F. was living with her paternal grandparents and doing well. The grandparents expressed a desire to adopt M.F. B.C. told the court she had used methamphetamine since 2004 and sought and completed treatment in 2012. She later relapsed. She admitted her drug use during pregnancy and acknowledged she had four other children, none of whom were in her custody. She also admitted she had been "in and out of prison" and was incarcerated during this case. She acknowledged she was currently in county jail awaiting trial for an assault on a family member that occurred in May 2017. However, she told the court, she no longer wanted to live her life using drugs and desired to be a mother to M.F.

The trial court terminated B.C.'s parental rights based on four predicate grounds. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (M), and (O) (West 2018). It found also clear and convincing evidence supporting a conclusion that termination of B.C.'s parental

2

rights was in M.F.'s best interest. TEX. FAM. CODE ANN. § 161.001(b)(2). It appointed the Department as the permanent managing conservator of M.F.

Analysis

Best Interest

In her first issue, B.C. contends the evidence is legally and factually insufficient to support the trial court's best interest finding. B.C. does not challenge the predicate grounds under which the trial court terminated her parental rights. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (M), and (O). Rather, she concedes the evidence is sufficient to support those grounds given her drug use during pregnancy and her incarceration during the case. *See In re D.S.,* 333 S.W.3d 379, 388-89 (Tex. App.—Amarillo 2011, no pet.) (If multiple predicate grounds are found by the trial court, we will affirm based on any one ground because only one is necessary for termination of parental rights. We are bound by unchallenged findings supporting termination). And, B.C. acknowledges that the same evidence that supports the predicate grounds for termination under section 161.001(b)(1)(D), (E), (M), and (O) is relevant to the sufficiency of the evidence supporting the best interest finding under section 161.001(b)(2). *In re C.H.,* 89 S.W.3d 17, 28 (Tex. 2002). However, she contends that when the *Holley* factors and the factors set forth in Family Code section 263.307(b)[2] are considered, the trial court's best interest finding should be reversed.

---

[2] TEX. FAM. CODE ANN. § 263.307(b) (West 2018) (listing factors in determining best interest of child).

In evaluating the best-interest evidence for legal sufficiency in parental-rights termination cases, we determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction that the court's best interest finding was true. *In re J.P.B.,* 180 S.W.3d 570, 573 (Tex. 2005) (per curiam) (citing *In re J.F.C.,* 96 S.W.3d 256, 266 (Tex. 2002)). We review all the evidence in the light most favorable to the best interest finding and judgment. *Id.* We resolve any disputed facts in favor of the finding if a reasonable factfinder could have done so and we disregard all evidence that a reasonable factfinder could have disbelieved. *Id.* We consider undisputed evidence even if it is contrary to the finding. *Id.* Witness credibility issues "that depend on appearance and demeanor cannot be weighed by the appellate court; the witnesses are not present." *Id.* (citation omitted).

We are required to perform "an exacting review of the entire record" in determining whether the evidence is factually sufficient to support the termination of a parent-child relationship. *In re A.B.,* 437 S.W.3d 498, 500 (Tex. 2014). In reviewing the evidence for factual sufficiency, we give due deference to the factfinder's findings and do not supplant its judgment with our own. *In re H.R.M.,* 209 S.W.3d 105, 108 (Tex. 2006). We determine whether, based on the entire record, a factfinder could reasonably form a firm conviction or belief that termination of the parent-child relationship would be in the best interest of the child. *In re C.H.,* 89 S.W.3d at 28. There is a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.,* 209 S.W.3d 112, 116 (Tex. 2006).

In our review of the entire record, the same evidence may be probative of both the subsection (1) ground and best interest of the child. *In re E.C.R.,* 402 S.W.3d 239, 249-50 (Tex. 2013) (citing *In re C.H.,* 89 S.W.3d at 28). Nonexclusive factors that the trier of

4

fact in a termination case may also use to evaluate the best interest of the child include: (A) the desires of the child; (B) the emotional and physical needs of the child now and in the future; (C) the emotional and physical danger to the child now and in the future; (D) the parental abilities of the individuals seeking custody; (E) the programs available to assist these individuals to promote the best interest of the child; (F) the plans for the child by these individuals or by the agency seeking custody; (G) the stability of the home or proposed placement; (H) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (I) any excuse for the acts or omissions of the parent.  *Holley v. Adams,* 544 S.W.2d 367, 371-72 (Tex. 1976) (citations omitted).  These factors are not exhaustive, and some of the factors may be inapplicable in a given case.  *In re C.H.,* 89 S.W.3d at 27.  Moreover, undisputed or significant evidence of just one factor may be sufficient in a particular case to support a finding that termination is in the best interest of the child.  *Id.*  However, the presence of negligible evidence relevant to each factor will not support such a finding.  *Id.*

Significant in this case is B.C.'s fourteen-year history of methamphetamine abuse. Over the course of that fourteen years, she had five children, four of whom were removed from her care due to her drug use.[3]  The record also shows her inability to remain sober for more than a few months despite treatment, her use of controlled substances during her pregnancy with M.F.,[4] and her incarceration during the pendency of this case.  *See*

---

[3] The record indicates that B.C.'s parental rights have not been terminated with regard to all of her children.  B.C. testified she has "partial custody" of one of her children. Another is placed with the child's biological father.  A third child was adopted by one of B.C.'s friends.

[4] Despite B.C.'s admitted use during pregnancy, the record indicates M.F. never tested positive for controlled substances.

5

*In re E.C.R.,* 402 S.W.3d at 249 (citing *In re C.H.,* 89 S.W.3d at 28) (evidence that supports one or more statutory predicate grounds for termination may be probative evidence that termination is in the child's best interest); *In re J.O.A.,* 283 S.W.3d 336, 346 (Tex. 2009) (trial court may consider a parent's history of drug use and irresponsible choices when making a determination to terminate a parent's rights). The trial court certainly could have taken this evidence of B.C.'s endangering conduct as strongly favoring a finding that termination was in M.F.'s best interest. *See In re R.W.,* 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied) ("As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child. Drug use and its effect on a parent's life and [the] ability to parent may establish an endangering course of conduct.") (internal citations omitted); *In T.G.R.-M.,* 404 S.W.3d 7, 15 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (citing *In re S.M.L.,* 171 S.W.3d 472, 479 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (repeated commission of criminal acts subjecting a parent to incarceration can negatively impact a child's emotional well-being)).

B.C.'s parole officer testified at the final hearing. She said she supervised B.C. during her parole stemming from her prison sentence after her convictions of multiple felonies. She told the court B.C. had one positive drug test for marijuana in February 2017 and admitted to using methamphetamine in March 2017. A subsequent drug screen yielded a positive result. Both of those positive tests occurred while B.C. was pregnant with M.F. The parole officer also testified that at the time of the final hearing, B.C. was in county jail awaiting trial on charges of assault of a family member. B.C. had committed a prior assault against the same family member. B.C. had also been issued a "parole

6

hold warrant." The parole officer also informed the court that B.C. was serving probation for a conviction in Colorado. From this evidence, the trial court could have concluded there was a strong likelihood that B.C. would be incarcerated for additional periods, further supporting its determination it was in M.F.'s best interest that B.C.'s parental rights be terminated. *In re T.G.R.-M.,* 404 S.W.3d at 15 (citation omitted).

B.C. was diagnosed with depression after M.F.'s birth. She entered a mental health care facility for five days. She also admitted she cut herself on her arm, trying to hurt herself. And, she admitted to using drugs after her release from the mental health facility and agreed it was "[p]robably not" a good combination to use illegal drugs with what the facility prescribed. B.C. testified she supported herself financially through disability benefits she received for her depression. She did not testify to any other means of support. These facts also weigh in favor of the trial court's best interest finding.

By the time of the final hearing, M.F. was just one year old. "When children are too young to express their desires, the fact finder may consider that the children have bonded with the foster family, are well-cared for by them, and have spent minimal time with a parent." *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.). A Department investigator testified M.F. was placed with her paternal grandparents and was doing "really well." The investigator said the grandparents desire to adopt M.F. She also said they are "able to care for her, they have a home, they have income, they love her very much. They are getting her to all of her appointments, they take very good care of her." B.C. conceded that she loves "where [M.F.] is at, with her grandparents. She is happy and well taken car[e] of, and I appreciate them very much." B.C. went on to say that while she did not have a relationship with the grandparents, they

"love [M.F.], and they take care of her, and they're her family, and that's more than—more than I could give her on my own. So I'm grateful for them." The trial court could have seen this evidence as showing a strong bond between M.F. and the grandparents. The trial court also had before it evidence of a lesser bond between M.F. and B.C. The record shows B.C. attended visits with M.F. when she was not incarcerated. A Department caseworker testified M.F. attended five or six weekly visits. On appeal, B.C. argues that no evidence showed she harmed M.F. after the child's birth because the child was removed from the hospital and there was no evidence of emotional or physical harm to the child during visits. Given the significance of the evidence supporting the bond between M.F. and the grandparents and the paucity of evidence supporting a bond between M.F. and B.C., we find this factor weighs in favor of the trial court's best interest finding.

B.C. testified to her desire to be part of M.F.'s life but did not provide the court evidence of her plan if her child were returned to her care. As noted, at the time of the final hearing, B.C. was in jail, awaiting trial for an assault charge. She had been incarcerated for most of the pendency of the case. She admitted she did not know when her trial would be or what would happen with regard to her parole. She told the court she was "so tired of the drugs, and the people that it brings into my life . . . I want to be able to raise [M.F.]." She testified "I am very serious about getting my life together for her." She told the court she had taken advantage of drug treatment in prison and had her depression under control. She requested that the trial court not terminate her parental rights so that "in the future, when I've got this behind me, I would like to have the chance to fight for [M.F.], or at least to be part of raising her." She testified, "And I feel good about

8

life, and I feel good about myself, and I know that I can do this.  I know that I can raise [M.F.], and I know that I can have a good life for she and I.  And I like it better like this."  She did not, however, describe any ability to care for M.F., financially or in other ways, and did not provide any information regarding potential employment, housing or transportation.  She also did not describe to the court any ability to meet M.F.'s physical and emotional needs and did not provide evidence of her own stability or parental abilities.  The trial court could have taken this as additional evidence that it was in M.F.'s best interest that B.C.'s rights be terminated.

The record contains some evidence weighing against the trial court's best interest finding.  However, evidence cannot be read in isolation but rather must be read in the context of the entire record.  *In re K.L.,* No. 07-16-00236-CV, 2016 Tex. App. LEXIS 11989, at *12 (Tex. App.—Amarillo Nov. 4, 2016, no pet.) (mem. op.) (citation omitted).  Prior to her incarceration, B.C. "set up some of her services."  She told the court that if she had not been incarcerated, she would have completed her services.  While incarcerated, B.C. sought psychiatric help and attended AA meetings, a twelve-step program, and Bible study.  B.C.'s parole officer testified B.C. admitted to her drug use, asked for help and told her she "wanted to be able to keep the baby and everything, but she needed some help."  B.C. also received prenatal care while pregnant; M.F. was born healthy.

The trial court is the "sole arbiter when assessing the credibility and demeanor of witnesses."  *In re A.B.,* 437 S.W.3d at 503.  Given B.C.'s long history of wrong choices, poor parenting and criminal conduct, the trial court was not required to give great weight to B.C.'s assertions.  *In re M.M.S.,* No. 07-16-00271-CV, 2016 Tex. App. LEXIS 11009,

9

at *20 (Tex. App.—Amarillo October 6, 2016, no pet.) (mem. op.). And, although B.C. testified strongly that she was ready and willing to change her life and wanted to raise M.F., largely absent from the testimony was evidence that waiting for B.C. to be available to parent the child was in M.F.'s best interest. As this court and others have pointed out, the best interest analysis focuses on the best interest of the child, not that of the parent. *See In re N.R.T.*, 338 S.W.3d 667, 677 (Tex. App.—Amarillo 2011, no pet.); *Dupree v. Texas Dep't of Protective & Regulatory Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ). B.C. points to the law's strong presumption that keeping a child with a parent is in the child's best interest. *See In re R.R.,* 209 S.W.3d at 116. The law recognizes also, however, the presumption that prompt and permanent placement of a child in a safe environment is in her best interest. TEX. FAM. CODE ANN. § 263.307; *In re N.R.T.*, 338 S.W.3d at 677. B.C. presents no persuasive argument that postponing M.F.'s permanent placement while B.C. resolves her criminal cases and her drug issues would be in the child's best interest.

The attorney ad litem for M.F. told the court that while he "sincerely hope[d] that [B.C.]'s testimony is truthful and honest, and [he hopes] she is able to get her life turned around, it is not in [M.F.'s] best interest to have to wait." He said it was best for M.F. that B.C.'s parental rights be terminated. The Department caseworkers and investigators also said that termination was in M.F.'s best interest. Taking all of the factors and evidence of each into consideration, we conclude the trial court could have agreed with the ad litem and those witnesses, and formed a firm conviction that termination of B.C.'s parental rights to M.F. was in the child's best interest.

We resolve B.C.'s first issue against her.

Appointment of Department as Managing Conservator

In her second issue, B.C. argues the evidence was insufficient to support the trial court's appointment of the Department as M.F.'s managing conservator. While B.C. concedes the evidence was sufficient to support the predicate grounds, she nevertheless asserts the evidence failed to show B.C. emotionally or physically harmed M.F. after birth. The Department argues the mother's issue is subsumed by her first issue. We agree.

We review a conservatorship determination for an abuse of discretion and will reverse only if the decision is arbitrary and unreasonable. *In re J.A.J.,* 243 S.W.3d 611, 616 (Tex. 2007) (citation omitted). Texas Family Code section 161.207(a) provides in part that if the court terminates the parent-child relationship with respect to both parents or to the only living parent, the court shall appoint "a suitable, competent adult," the Department, or a licensed child-placing agency as managing conservator of the child. TEX. FAM. CODE ANN. § 161.207(a).

Here, B.C. conceded the evidence presented at the final hearing was sufficient to support the predicate grounds. And we have concluded the evidence was sufficient to support the trial court's findings under section 161.001(b)(2). There was no evidence presented to establish appointment of another suitable, competent adult as conservator of the child. The mother's argument against the trial court's appointment of the Department as the permanent managing conservator is thus without merit. *In re N.T.,* 474 S.W.3d 465, 481 (Tex. App.—Dallas 2015, no pet.) (citations omitted). We overrule B.C.'s second issue.

Conclusion

Having resolved each of B.C.'s issues against her, we affirm the judgment of the trial court.

James T. Campbell
Justice